NUMBER 13-99-414-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI




JEFFERY EDWARD TAYLOR , Appellant, 

v.


THE STATE OF TEXAS , Appellee.





On appeal from the 230th District Court

of Harris County, Texas.



O P I N I O N


Before Justices Yañez, Rodriguez, and Baird (1)

Opinion by Justice Baird


Appellant was charged by indictment with the offense of aggravated robbery. The indictment alleged a prior felony
conviction for the purpose of enhancing the range of punishment. The jury convicted appellant of the charged offense. 
Appellant pled true to the enhancement allegation. The jury assessed punishment at fifty years confinement in the Texas
Department of Criminal Justice--Institutional Division, and a fine of $10,000. Appellant raises eleven points of error. We
will address only points of error one, two and three, and reverse and remand.

I. Jeopardy.

A. Procedural History.

Appellant was initially charged in a two paragraph indictment with the offenses of capital murder and aggravated robbery. 
Prior to voir dire, the following exchange occurred between the prosecutor and the trial court:

THE STATE: Let me say this for the record, I am abandoning the second paragraph of aggravated. It's probably going to
come up as a lesser.

THE JUDGE: Okay.

Following voir dire, the State read only the capital murder paragraph of the indictment, and appellant pled not guilty. At
the conclusion of the evidentiary stage of the guilt phase of the trial, the trial judge charged the jury on the offense of
capital murder and the lesser included offense of aggravated robbery. The aggravated robbery application paragraph
authorized the jury to convict upon finding appellant, either as a principal or as a party, caused serious bodily injury to the
complainant by stabbing him. The jury convicted appellant of the lesser offense, and subsequently assessed punishment at
confinement for life. The trial court's judgment was later reversed. Taylor v. State, 945 S.W.2d 295 (Tex. App.-Houston
[1st Dist.] 1997, pet. ref'd).

Upon remand, a grand jury returned the instant indictment which alleged two theories of aggravated robbery. Tex. Pen.
Code Ann. § 29.03(a)(1) & (2) (Vernon 1994). Specifically, the indictment alleged the offense was aggravated by using
and exhibiting a deadly weapon, and by causing seriously bodily injury by cutting and stabbing the complainant. The trial
judge submitted both theories to the jury and the jury returned a general verdict convicting appellant of the charged offense. 

B. Arguments and Analysis.

Appellant raises two arguments, both of which contend the instant prosecution was jeopardy barred following the events of
the first trial. (2)

1. Abandonment.

To preserve a portion of a charging instrument for a subsequent trial, the State must, before jeopardy attaches, take some
affirmative action, on the record, to dismiss, waive or abandon that portion of the charging instrument, and the State must
obtain permission from the trial judge to dismiss, waive or abandon that portion of the charging instrument. Ex parte
Preston, 833 S.W.2d 515, 518 (Tex. Crim. App. 1992) (opinion on original submission). (3) In a jury trial, jeopardy attaches
when the jury is impaneled and sworn. Crist v. Bretz, 437 U.S. 28, 38 (1978); Preston, 833 S.W.2d at 517. As noted
above, prior to voir dire, the State announced it was abandoning the aggravated robbery allegation. The judge responded,
"okay." The State's announcement was an affirmative act, on the record, and the judge's response was her permission for
the abandonment. (4) Therefore, we hold the instant prosecution of aggravated robbery was not jeopardy barred.

2. Alleging a Different Theory of Aggravated Robbery.

Appellant next argues the grand jury was not authorized to return an indictment which alleged a theory of aggravated
robbery in addition to the one submitted to the jury at the first trial. The State cites Barnes v. State, 644 S.W.2d 1 (Tex.
Crim. App. 1983), for the proposition that the theories alleged in the instant indictment are permissible. In Barnes, the
defendant was charged with the offense of murder, but convicted of the lesser offense of voluntary manslaughter. The
conviction was reversed for charge error, but the issue remained whether the defendant could be re-tried for a form of
voluntary manslaughter different from that permitted by the indictment. The Barnes Court held: "Although the appellant
may not be retried for committing any offense greater than voluntary manslaughter, . . . this Court's decision will not
preclude the State from reindicting the appellant for committing the offense of voluntary manslaughter, and alleging both
methods of committing the offense, . . . should it desire to do so."Barnes, 644 S.W.2d at 2-3 (internal citations omitted);
see also Durrough v. State, 620 S.W.2d 134, 138 (Tex. Crim. App. 1981) (following reversal defendant may be retried on
original indictment or new indictment charging the same offense). We are persuaded that the instant case is controlled by
Barnes. Therefore, we hold the instant prosecution for aggravated robbery by using and exhibiting a deadly weapon was
not jeopardy barred. 

The first point of error is overruled.

II. Misstatement of Law.

The second and third points of error contend the trial judge misstated the law during voir dire.

A. Procedural Summary.

During her remarks to the venire, the trial judge covered several general principles of law. When addressing the issue of
punishment, she correctly stated the range for the offense of aggravated robbery was five to ninety-nine years or life, and a
possible fine not to exceed $10,000. Tex. Pen. Code Ann. § 12.32 (Vernon 1994). The trial judge then gave a hypothetical
example of a convenience store clerk who was robbed by a seventeen-year-old defendant with an unloaded gun to obtain
funds for his infant child who was born with a health defect and was ill. In the hypothetical, the defendant gave the robbery
proceeds to the medical personnel caring for the child, voluntarily surrendered himself to the police, and confessed to the
crime. At the hypothetical trial, the robbery victim testified that he did not want to see the defendant go to prison for
committing the crime. At this stage of the hypothetical, appellant objected, stating a victim may not make a
recommendation as to punishment. The trial judge overruled the objection and continued with the hypothetical by stating
the defendant had never been in trouble, and concluded by stating "that may be a situation where a jury would want to
consider something on the lower end of the punishment scale."

Prior to the parties exercising their peremptory strikes, appellant moved to quash the venire on the basis that the trial judge
had misstated the law in the hypothetical by stating the victim could make a recommendation as to punishment. In making
this motion, appellant cited several cases to the trial judge. The trial judge overruled the motion. Appellant then moved to
challenge for cause every member of the venire because "they've been polluted with a misconception of the law on victim
punishment recommendations." The trial judge denied that motion. Appellant then requested additional peremptory
challenges; that request was also denied. After exhausting his peremptory strikes, appellant identified several objectionable
jurors, and the trial judge again denied the request for additional peremptory strikes. Finally, when the jury was impaneled,
the trial judge asked if there was an objection to the jury and appellant responded, "[o]ther than the previous objections I've
made, I have no additional." To which the trial judge replied: "Got you. Berated (sic) on objections. Got you. Thank
you." (5) The jury ultimately convicted appellant of the charged offense.

At the punishment phase of trial, appellant pled true to the enhancement allegation. After the State rested its case in chief
at the punishment phase of trial, defense counsel approached the bench and stated he would not be offering any evidence on
the issue of punishment because of the trial judge's hypothetical that the complainant could make a recommendation as to
punishment. (6) Appellant then made an offer of proof as to what punishment evidence he would have offered but for the
hypothetical employed by the trial judge during voir dire. (7) The jury found the enhancement allegation true and assessed
punishment at confinement for fifty years and a fine of $10,000. 

B. The Law.

By lodging a timely objection and obtaining a ruling thereon, appellant has preserved this point of error for our review. 
Tex. R. App. P. 33.1. The issue, therefore, is whether the trial judge misstated the law.

The leading case on this subject is Sattiewhite v. State, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989), where the capital
defendant called an expert witness and attempted to elicit testimony as to which punishment, a life sentence or the death
penalty, would be most appropriate. The State's objection was sustained by the trial judge. The Court of Criminal Appeals
upheld that ruling, holding such testimony would escalate into a "battle of the experts" and "the subject matter of what
punishment should be assessed was not one upon which the aid of his opinion would have been of assistance to the trier of
fact. Rather, such testimony would only tend to confuse the jury." Id. at 290. (8)

The courts of appeals have adhered to the holding of Sattiewhite, and have even extended it to non-expert witnesses. 
Wright v. State, 962 S.W.2d 661, 663 (Tex. App.-Fort Worth 1998, no pet.) (trial judge correctly sustained State's objection
to the victim's testimony on the type of punishment defendant should receive); Fuller v. State, 819 S.W.2d 254, 258
(Tex.App.-Austin 1991, pet. ref'd) (witness may not recommend a particular punishment to the trier of fact); Gross v. State,
730 S.W.2d 104, 105-06 (Tex. App.-Texarkana 1987, no pet.) (trial judge properly excluded testimony of the complainant
in indecency with child case requesting lenient sentence); see also Fryer v. State, 993 S.W.2d 385, 388 (Tex. App.-Fort
Worth 1999, pet. granted); Johnson v. State, 987 S.W.2d 79, 87 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd); Mayo v.
State, 861 S.W.2d 953, 955 n.2 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd); Wunneburger v. State, 844 S.W.2d 864,
869 (Tex. App.-Amarillo 1992, pet. ref'd).

We have also addressed this subject. In Hughes v. State, 787 S.W.2d 193 (Tex. App.-Corpus Christi 1990, pet. ref'd), the
defendant was convicted of aggravated robbery. At the punishment phase, the defendant sought to elicit the complainant's
opinion of an appropriate sentence. The trial judge sustained the State's objection. We observed: "The argument that a
witness may recommend a particular punishment to the trier of fact has been soundly rejected." Id. at 196 (citing
Sattiewhite, 786 S.W.2d at 290). We upheld the trial judge's ruling because the complainant's testimony was "not relevant
to the jury's evaluation of the facts of the case in assessing a proper punishment." Id. (9)

In light of the foregoing authority, we hold the trial judge misstated the law in her hypothetical and, therefore, erred in
overruling appellant's objection. (10)



C. Harm Analysis.

Our research reveals four distinct lines of cases dealing with harm in this area. As there has been no recent statement from
the Court of Criminal Appeals as to which body of law controls, we will address the issue of harm in the four separate
contexts.

1. Morrow v. State.

First, there are several cases where a hypothetical was used to explain a general principle of the law, but the hypothetical
misstated the law. In these instances, the errors resulted in reversal. Morrow v. State, 753 S.W.2d 352, 376-77 (Tex. Crim.
App. 1988) (erroneous hypothetical "so distorted the lawful course of the whole voir dire that appellant was denied due
course of law and effective representation of counsel as guaranteed by Article I, §§ 19 and 10 of the Texas Constitution.");
Lane v. State, 743 S.W.2d 617, 627 (Tex. Crim. App. 1987) ("[H]ypothetical was a blatant misstatement of the law of
capital murder."). In Morrow, the Court of Criminal Appeals presumed prejudice on two separate theories: (1) no harm
analysis was attempted because the hypothetical was given during the State's voir dire, before the defendant could question
the particular venire person, effectively precluding appellant from mounting a challenge for cause; and (2) the hypothetical
would have corrupted any answers the veniremembers would have subsequently given. Morrow, 753 S.W.2d at 376. The
same is true in the instant case. Therefore, under this line of cases, we cannot hold the error harmless.

2. Williams v. State.

The case most often cited for permitting a harm analysis in this situation is Williams v. State, 622 S.W.2d 116, 119 (Tex.
Crim. App. 1981), where the Court of Criminal Appeals held a misstatement of the law during voir dire will warrant
reversal only if the appellant was harmed by the statements. See also, Kelley v. State, 845 S.W.2d 474, 479 (Tex.
App.-Houston [1st Dist.] 1993, pet. ref'd) (same); Carlson v. State, 695 S.W.2d 695, 697 (Tex. App.-Dallas 1985, pet.
ref'd) (same). Under this line of cases, the error occurs during voir dire examination conducted by either the judge or the
prosecutor. For example, in the capital case of Williams, the trial judge misstated the law related to the voluntariness of a
confession by explaining a confession is inadmissible only if it is obtained by torture. A similar explanation was given to
the other eleven venire members selected to serve as jurors. The Court of Criminal Appeals held the error was harmless
because "there was no evidence before the jury raising the issue of voluntariness; the appellant did not testify or call any
witnesses on the issue. At worst the trial court's statements merely misled the jury as to the appropriate standard for
determining whether a confession was given voluntarily. Since that issue was not before the jury, no harm resulted." 
Williams, 622 S.W.2d at 119. Similarly, in Jackson, the prosecutor misstated the law during venire on the issue of
punishment by stating rehabilitation was not germane to the resolution of the punishment issues in a capital case. Jackson
v. State, 822 S.W.2d 18 (Tex. Crim. App. 1990). This misstatement of the law was determined to be harmless because no
evidence was admitted on the issue of rehabilitation. Therefore, consistent with Williams, the Court of Criminal Appeals
held the error was harmless beyond a reasonable doubt. Id. at 23-26. Finally, in Kelley, the prosecutor misstated the law,
but the error was held harmless because the judge instructed the venire to disregard the prosecutor's misstatement. Kelley,
845 S.W.2d at 479.

When we apply this rationale to the instant case, we are unable to declare the instant error harmless. First, there was no
curative instruction by the trial judge to the venire that the possibility of the complainant testifying at the punishment phase
of the trial was a misstatement of the law. (11) Second, unlike Williams and Jackson, where the issue which was the subject
of the misstatement never arose, in the instant case the misstatement related to the issue of punishment, which the jury
ultimately assessed.

Under this analysis, the only way the instant misstatement could have been rendered harmless was if the trial judge
corrected herself, appellant subsequently changed his punishment election and had his punishment assessed by the trial
judge instead of the jury, or if the jury had assessed the minimum punishment. (12) Because none of those events occurred,
we cannot hold the error harmless under this line of cases.

3. Texas Rule of Appellate Procedure 44.2 (a) and (b).

The cases cited above were decided either before the Texas Rules of Appellate Procedure were promulgated, or refer to the
prior rule prescribing the analysis for determining harm. On December 18, 1985, the Court of Criminal Appeals approved
the rules of appellate procedure and they became effective on September 1, 1986. Since that time, the test for harmless
error, with some exceptions, has been codified. Mallory v. State, 752 S.W.2d 566, 569 (Tex. Crim. App. 19988) ("[T]he
elective propriety of expressing the test for harmless error in a less than uniform fashion is no longer available.") 
Therefore, it is entirely possible that the harm analyses in parts II. C. 1 and 2, supra, do not control the instant case.
Therefore, we will address the issue of harm in light of the current rules of appellate procedure.

Under former rule 81(b)(2) of the Texas Rules of Appellate Procedure reversal was mandated unless the appellate court
determined beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. However,
current rule 44.2(a) of the Texas Rules of Appellate Procedure now confines that standard of analysis to constitutional
errors. Rule 44.2(b) prescribes the standard for non-constitutional errors. and provides that errors that do not affect
substantial rights must be disregarded. Tex. R. App. P. 44.2(b). Therefore, the question becomes whether the error is
constitutional.

a. Constitutional Error Analysis.

Constitutional provisions bear upon jury selection in a criminal case. Loredo v. State, 59 S.W.3d 289, 292 (Tex.
App.-Corpus Christi 2001, no pet.) (citing U.S. Const. amend. VI; Tex. Const. art. I, § 10). The right to pose proper
questions during voir dire is included within the right to counsel. Gonzales v. State, 994 S.W.2d 170, 171 (Tex. Crim. App.
1999). Furthermore, the right to counsel includes the right to have counsel intelligently exercise peremptory challenges. 
Raby v. State, 970 S.W.2d 1,10 (Tex. Crim. App. 1998). Additionally, in Morrow, the Court of Criminal Appeals held the
misstatement of law denied the defendant "due course of law and effective representation of counsel as guaranteed by
Article I, §§ 19 and 10 of the Texas Constitution." Morrow, 753 S.W.2d at 377.

The harm caused by voir dire error is often difficult to measure because the error itself leads to the creation of a barren
record which prevents a meaningful harm analysis. Franklin v. State, 23 S.W.3d 81, 83 (Tex. App.-Texarkana 2000, pet.
filed). If the concrete data necessary to conduct a harm analysis is absent, we must nevertheless perform the test, and the
absence of information is simply taken into account in determining whether the error is harmless. Cain v. State, 947
S.W.2d 262, 264 (Tex. Crim. App. 1997). Where the error involved defies analysis by harmless error standards, or the data
is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless beyond a
reasonable doubt. Franklin, 23 S.W.3d at 83; Cain, 947 S.W.2d at 264.

The instant case presents such a problem. To be qualified for jury service, prospective jurors must be willing to consider
the full range of punishment applicable to the offense submitted for their consideration. Banda v. State, 890 S.W.2d 42, 55
(Tex. Crim. App. 1994). They must be able to conceive of situations where both a minimum and maximum penalty would
be appropriate. Fuller v. State, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992). In the instant case, the trial judge misstated
the law by constructing a hypothetical which falsely created in the veniremembers' minds a situation where the minimum
punishment might be appropriate. Therefore, rather than having a record which shows the venire could consider the full
range of punishment and conceive of situations where the minimum penalty would be appropriate, we have a record where
the jury was not properly qualified on the issue of punishment. In the absence of evidence that would permit us to
determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we cannot declare
the error harmless. Franklin, 23 S.W.3d at 83. (13)



b. Non-Constitutional Error.

Assuming the error was not constitutional, we will conduct a rule 44.2(b) harm analysis. Under such an analysis, "it is the
responsibility of the appellate court to assess harm after reviewing the record and . . . the burden to demonstrate whether the
appellant was harmed by a trial court error does not rest on the appellant or the State." Johnson v. State, 43 S.W.3d 1, 5
(Tex. Crim. App. 2001); Schutz v. State, 63 S.W.3d 442, 444-45 (Tex. Crim. App. 2001). This is so because ordinarily,
there is no way to prove actual harm. Ovalle v. State, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000) (defendant does not bear
burden of proving harm in context of jury charge error).

A defendant has no right, constitutional or statutory, to have a particular individual serve on his jury. Johnson, 43 S.W.3d at
6-7; Jones, 982 S.W.2d at 393. This is so because a defendant's rights are affected by those veniremembers who actually
serve on the jury, not by those who are excused from service. Johnson, 43 S.W.3d at 6-7. A defendant's only substantial
right in this context, therefore, is that the jurors who do serve be qualified. Jones, 982 S.W.2d at 393.

Typically, voir dire error involves an incorrect ruling on a challenge for cause. If the trial judge errs in granting a State's
challenge, the error is apparently always harmless because the error in excusing the venire person does not deprive the
defendant of a lawfully constituted jury. Moore v. State, 54 S.W.3d 529, 538 (Tex. App.-Fort Worth (noting research had
not revealed a single post-Jones case holding that the erroneous grant of a State's challenge for cause led to reversal). On
the other hand, when the error arises from the erroneous denial of a challenge for cause, harm is shown if the defendant: 
(1) used a peremptory challenge to remove the venire member; (2) exhausted his peremptory challenges; (3) requested and
was denied an additional peremptory challenge; and (4) identified an objectionable venire member who sat on the jury and
on whom the defendant would have exercised a peremptory challenge had he not exhausted his peremptory challenges to
correct the trial judge's erroneous denial of his challenge for cause. Johnson, 43 S.W.3d at 6-7. 

The instant case is unique in the rule 44.2(b) context because it does not deal with a challenge for cause but rather a
misstatement of law. However, when the effect of such a misstatement causes unqualified veniremembers to believe they
are qualified, or immunizes veniremembers who would otherwise be subject to a challenge for cause from such a challenge
because they are qualified under the misstated legal premise, we hold that the effect of the error is the same as an erroneous
denial of a challenge for cause. For example, in the instant case, veniremembers who could not consider the lower end of
the punishment range of law were subject to being challenged for cause. However, because of the trial judge's
misstatement of law, those same veniremembers could now consider the lower range under a circumstance where the
complainant personally testified on the issue of the defendant's punishment. When we apply the harm analysis of Johnson,
we see appellant took the steps required for a determination of harm. Therefore, under this rationale, we cannot declare the
error harmless.

D. Conclusion.

We hold that under any analysis we employ, the error was not harmless. Accordingly, we sustain the second and third
points of error. Because these points are dispositive, we do not address the remaining points of error. Tex. R. App. P. 47.1.

The judgment of the trial court is reversed and the case is remanded to that court for further proceedings. Tex. Code Crim.
Proc. Ann. art. 44.29(a) (Vernon Supp. 2002); Carson v. State, 6 S.W.3d 536, 539 (Tex. Crim. App. 1999).



___________________________

CHARLES F. BAIRD, Justice



Publish. Tex. R. App. P. 47.3(b).

Opinion delivered and filed this 14th day of March, 2002.

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Although we ultimately reverse the trial court's judgment for the reasons stated in part II, of this opinion, we are
nevertheless required to address the first point of error. An appellate court must always address those points of error that
would, if successful, prohibit further prosecution, e.g., points of error contending the prosecution was jeopardy barred, or
that the evidence was legally insufficient. McFarland v. State, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996); Burks v.
United States, 437 U.S. 1, 15 (1978);Greene v. Massey, 437 U.S. 19, 25-26 (1978). 

3. Much confusion has been generated by focusing on the particular terms of art "abandon," "dismiss," "sever," "waive,"
etc. However, the Court of Criminal Appeals made it clear in Proctor v. State, 841 S.W.2d 1 (Tex. Crim. App. 1992), that
the lexicon is unimportant. All that is necessary is that the State, either orally or in writing, on the record with the
permission of the trial judge take some affirmative action before jeopardy attaches to preserve the charge for future
prosecution. Id., 841 S.W.2d at 5 n. 1.

4. The word "okay" when used in a court proceeding often leads to confusion. For example, in Mallet v. State, 28 S.W.3d
603, 606 (Tex. App.-Corpus Christi 2000, pet. ref'd), the trial judge stated "okay" in a dialogue wherein the State moved to
abandon a portion of the charging instrument. While at first blush, the trial judge's language seemed to infer permission for
the abandonment, that inference was incorrect because the trial judge later found appellant guilty of each of the offenses
charged. See also Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999) (defense counsel stating "okay," did not
indicate an acquiescence or capitulation to trial judge's erroneous ruling). The better practice is for the participants,
especially the trial judge, to clearly state her rulings using a variation of grant, deny, sustain and overrule.

5. Although not significant to our ultimate resolution of this point, we pause to state that the trial judge acted in a
courteous manner throughout the voir dire. Therefore, the use of the word "berated" would be inconsistent with that
behavior. Consequently, we believe the trial judge actually said "be noted" and her response was either misunderstood or
misprinted by the court reporter.

6. Specifically, defense counsel stated: "I'm literally afraid to put on evidence because ... I cannot offer punishment
recommendation because the Court of Criminal appeals Sattiewhite and the Court of Appeals in Gross and Hughes have
said ... that punishment recommendations, sentencing recommendations are inadmissible .... So, therefore, if the jury is
expecting this stuff - - because the State has said and the trial Court has agreed that they can hear it and I don't put it on, it's
going to make them speculate as to my not being able to come up with a person to make these recommendations. And it's
going to hurt my client. And that has followed us all the way to this point in time. But I am telling the Court that we are
not going to put on any evidence right now." 

7. The record reflects that appellant's father was present in the courtroom and, according to the proffer, could have
testified, inter alia, that appellant had received a high school education and "additional certificates" while incarcerated for
this offense, and had an exemplary behavior record while in prison. 

8. The Sattiewhite Court cited the following cases to support its holding: Schulz v. State, 446 S.W.2d 872 (Tex. Crim.
App. 1969) (psychiatrist was not permitted to testify regarding the effect of placing defendant on probation rather than
sentencing him to imprisonment); Logan v. State, 455 S.W.2d 267 (Tex. Crim. App. 1970) (probation officer not permitted
to testify regarding requirements of application for probation and as to probation program); and, Asay v. State, 456 S.W.2d
903 (Tex. Crim. App. 1970) (testimony of law enforcement officer, an ex-penal system employee, who knew defendant's
character, that short term of imprisonment would be more likely to effect reform of defendant than would a long term was
properly excluded).

An additional reason behind such holdings is that such opinions from interested witnesses are merely an appeal to
sympathy or prejudice, because unobjective witnesses are in a worse position to form an opinion than the jury itself. See 1
MCCORMICK ON EVIDENCE § 12, at 52-53 (J. Strong 5th ed.1999).

9. We note that article 42.03 of the Code of Criminal Procedure does not permit victims, close relatives of a deceased
victim, or guardians of a victim to state their views about the offense, the defendant, and the effect of the offense on the
victim until (1) after punishment has been assessed and the court has determined whether or not to grant community
supervision in the case; (2) after the court has announced the terms and conditions of the sentence; and (3) after sentence is
pronounced. Tex. Code Crim. Proc. Ann. art. 42.03, § 1(b) (Vernon Supp. 2002) (emphasis added)..

10. The State cites Johnson v. State, 987 S.W.2d 79 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd), for the proposition
that the trial judge did not misstate the law. However, Johnson is distinguishable from the instant case. In Johnson, the
trial court sustained trial counsel's objection when the State sought to ask the defendant's mother on cross-examination for a
punishment recommendation. However, when the State rephrased the question in the form of a hypothetical, trial counsel
did not object. The issue on appeal was whether the failure of trial counsel to lodge an objection to the hypothetical
question constituted ineffective assistance of counsel. The Johnson Court specifically recognized, "a witness may not
recommend to the trier of fact a particular punishment." 987 S.W.2d at 87. However, the court did not find counsel to be
ineffective because the record was silent as to why trial counsel failed to lodge a second objection. Therefore, "[t]o hold
counsel's inaction constituted ineffective assistance would require us to engage in speculation as to the basis for counsel's
inaction." Id. at 88 (citing Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Accordingly, Johnson should
not be read as holding that our law permits a witness to make a punishment recommendation. Rather, we believe Johnson
stands for the proposition that the failure to raise a valid objection may constitute sound trial strategy Herman v. State, 923
S.W.2d 622, 626 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd); Thomas v. State, 886 S.W.2d 388, 392 (Tex.
App.-Houston [1st Dist.] 1994, pet. ref'd); Ahmadi v. State, 864 S.W.2d 776, 783 (Tex. App.--Fort Worth 1993, no pet.). 
Because the instant case presents a situation where counsel objected ,Johnson is not controlling.

Additionally, we are familiar with the opinion in Fryer v. State, 2002 WL 122651 (Tex. Crim. App. 2002), wherein the
defendant complained the victim's punishment recommendation in a PSI violated Sattiewhite. The Fryer Court reaffirmed
Sattiewhite but held that case did "not address, even peripherally, the propriety of including in a PSI the opinion of the
crime victim." Therefore, "[b]ecause, generally, the rules of evidence do not apply to the contents of a PSI, Sattiewhite is
inapposite." In the instant case, the complained of comments by the trial judge were directed to the venire. Therefore,
because punishment was ultimately assessed by the jury and not by the trial judge following the preparation of a PSI, Fryer
does not impact our holding in the instant case.

11. The State cites us to a portion of the record following the trial judge overruling appellant's objection, where the trial
court stated:


I can't tell you an appropriate case for five years. I can't tell you an appropriate case for life. And the lawyers can't tell you. 
You notice at this point I've not discussed the facts of this case. One reason is that I don't know the facts of this case. I will
learn the facts along with the 12 of you chosen.



. . .



So, I'm going to ask you whether or not you can consider the full range of punishment for the offense of aggravated
robbery. And then I'm going to ask you specifically if you can consider five years in an appropriate case - keep in mind you
get to decide what the appropriate case is - and whether or not you can consider life in an appropriate case for aggravated
robbery keeping in mind once again you get to decide what's appropriate for life in an aggravated robbery case.





These statements are of no consequence to our analysis here because they do not constitute a curative instruction. In other
words, these statements could not have cured the error because they did not recognize that a witness may not make a
punishment recommendation. Consequently, after hearing these statements, the venire members were still entitled to
believe an appropriate case for five years was one in which the complainant testified and recommended such a punishment
because the trial judge sanctioned that belief. Hughes v. State, 878 S.W.2d 142, 160 (Tex. Crim. App. 1992), (by
overruling an objection to improper jury argument, trial judge puts "stamp of judicial approval" on the improper
statements); Good v. State, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986) (overruling objection magnifies possibility for
harm).

12. The State argues the error was harmless because the complainant did not testify in the instant case. This argument is
undermined by the fact that the complainant in the instant case could not have testified because he was killed during the
instant offense. This fact alone seems to establish harm rather than eliminate it because the misstatement of law effectively
qualified the venire not only on an erroneous legal premise, but an impossible factual premise as well.

13. The only tangible proof on the issue of harm is the offer of proof made by appellant when explaining why he was not
offering any punishment evidence. That proffer establishes the error was not harmless, but rather harmful because the
misstatement of law caused appellant to not place punishment evidence before the jury. Appellant's proffer evinces what
we recently recognized: jury selection error may skew acts subsequently taken by counsel during the trial. Loredo v. State,
59 S.W.3d 289, 293 (Tex. App.-Corpus Christi 2001, no pet.).