NUMBER 13-99-414-CR

 

                                     COURT OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

 

 

 

JEFFERY EDWARD TAYLOR,                                                         Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

 

 

                             On
appeal from the 230th District Court

                                         of
Harris County, Texas.

 

 

 

                         OPINION ON REMAND

 

                       Before Justices Yañez, Rodriguez, and Baird[1]

                                  Opinion by Justice Baird

                                                    








Appellant was charged by indictment with the offense
of aggravated robbery.  The indictment
also alleged a prior felony conviction for the purpose of enhancing the range
of punishment.  The jury convicted
appellant of the charged offense, appellant pleaded true to the enhancement
allegation, and the jury assessed punishment at fifty years confinement in the
Texas Department of Criminal JusticeBInstitutional Division and a fine of $10,000.  On direct appeal, we addressed three of
appellant=s eleven issues and reversed the judgment of the
trial court.  See Taylor v. State,
74 S.W.3d 457, 464 (Tex. App.BCorpus Christi 2002), rev=d, 109
S.W.3d 443 (Tex. Crim. App. 2003).  The
court of criminal appeals granted the State=s petition for discretionary review, reversed our
decision, and remanded the case to this Court for consideration of appellant=s remaining issues. 
See Taylor v. State, 109 S.W.3d 443, 455 (Tex. Crim. App.
2003).  We now address points of error
four through eleven.

I. 
Introduction of Witness=s Prior Consistent Statement.








James Law testified as a witness in the State=s case-in-chief. 
Law testified that he saw the alleged offense, drove the decedent=s truck from the scene, and subsequently reported the
crime to the homicide division of the Houston Police Department.  During Law=s testimony, the State established that Law made a
prior inconsistent statement that he had not driven the decedent=s truck. 
Following this testimony, the trial judge instructed the jury to
consider the inconsistent statement Ain judging the credibility of the witness, if it does
assist you in judging the credibility of the witness, and is not to be
considered by you as substantive evidence.@  Law then
testified that he subsequently told a homicide detective that he (Law) had, in
fact, driven the decedent=s truck from the scene.  The trial judge overruled appellant=s objections to this prior consistent
statement but gave the jury an instruction similar to the one discussed above.[2]

The fourth issue contends the trial judge erred by
permitting Law to testify about the prior consistent statement.  Appellant argues this testimony violated Texas
Rule of Evidence 607, which provides that A[t]he credibility of a witness may be attacked by any
party, including the party calling the witness.@[3]  See Tex. R. Evid. 607.  For the following reasons, we reject
appellant=s argument.

First, the testimony of Law=s prior consistent statement was not offered for
impeachment purposes.  Rather the
testimony was offered to show that Law initially lied out of fear but later Acame clean@ and ultimately told the truth.  Because the prior consistent statement
was not offered to impeach Law=s testimony, Rule 607 is not applicable.








Second, a proper objection to Law=s prior consistent statement could have been
lodged under Texas Rule of Evidence 801(e)(1)(B), which prohibits prior
consistent statements unless offered to rebut an express or implied charge of
recent fabrication or improper influence. 
Tex. R. Evid.
801(e)(1)(B).  The rule was applicable in
the instant case because Law=s testimony regarding his prior consistent
statement was offered in the State=s case-in-chief. 
At that point, there had been no charge of fabrication or improper
influence.  However, an objection under
Rule 801(e)(1)(B) was not lodged in the trial court; rather, the rule is cited
only in a footnote in appellant=s brief. 
Accordingly, this argument was not preserved for appellate review.  Trevino v. State, 991 S.W.2d 849, 854
(Tex. Crim. App. 1999) (to preserve claim for appellate review, objection at
trial must comport with the argument advanced on appeal).

For these reasons, the fourth point of error is
overruled.

II.  Appellant=s Custodial Statement.  

The fifth issue contends the trial court erred in
admitting appellant=s custodial statement.  Appellant advances two arguments in support
of this point.  Initially, he argues the
statement was inadmissible under the doctrine of collateral estoppel which Aprevents the relitigation of facts once they have
been found in an action between the same parties.@  State v.
Patrick, 990 S.W.2d 450, 451 (Tex. App.BCorpus Christi 1999, no pet.).  To invoke this doctrine, appellant relies
upon language in the opinion reversing his first conviction.  Taylor v. State, 945 S.W.2d 295, 299
(Tex. App.BHouston [1st Dist.] 1997, pet. ref=d).  In the
first trial, the State offered into evidence the gun allegedly wielded by
appellant while his accomplice, Mickey Webb, stabbed the decedent.  The First Court of Appeals held the arrest
which led to the discovery of the firearm was illegal.  Id. 
Based upon this holding, the court stated Athe trial court erred in not suppressing any
evidence obtained as a result of the invalid arrest.@  Id.  The admissibility of the custodial statement
was not specifically addressed by the court of appeals because the State did
not seek to introduce it.








The "law of the case" doctrine provides
"that an appellate court's resolution of a question of law in a previous
appeal of the same case will govern the disposition of the same issue when
raised in a subsequent appeal."  Ware
v. State, 736 S.W.2d 700, 701 (Tex. Crim. App. 1987). "The doctrine
assures trial courts that they can rely on the appellate court's disposition of
an issue in presiding over the case and provides an incentive for trial courts
to follow these decisions closely." 
Howlett v. State, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999); Lee
v. State, 67 Tex. Crim. 137, 148 S.W. 706, 713 (1912) (op. on reh'g)
(without "law of the case" doctrine, "trial courts would in a
great measure be at sea, and would feel inclined and be authorized to give but
little weight to the decisions of the [appellate] court").  Most recently, in Carroll v. State,
the court of criminal appeals recognized that the law of the case doctrine:

provides assurance to the trial court that it need
not reconsider a specific legal issue in a particular case which a higher court
has already decided; the trial judge is entitled to follow and rely upon the
reviewing court's reasoning and result on that specific issue. The doctrine
thus promotes consistency and efficiency. See generally 5 Am.Jur.2d ' 6 05 (noting that "the various rules which make
up the law of the case doctrine serve not only to promote the goal of judicial
economy but also operate (1) to protect the settled expectations of the
parties, (2) to insure uniformity of decisions, (3) to maintain consistency
during the course of a single case, (4) to effectuate the proper and
streamlined administration of justice, and (5) to bring litigation to an
end").

Carroll v. State, 101 S.W.3d 454, 461 (Tex. Crim. App. 2003).  In the instant case, therefore, the previous
decision of the First Court of Appeals that the arrest was illegal was binding
on the trial judge, and we consider it binding on this Court as well.  To that extent, we accept the premise of
appellant=s argument.








The question is how expansive a reading we give the
language used by the First  Court of
Appeals.  Appellant asks us to take the
language literally; the court called for the suppression of Aany evidence,@ and that phrase necessarily includes appellant=s custodial statement.  We reject this argument for two reasons.  First, as noted above, the statement was not
admitted by the State in the first trial.[4]  Therefore, the only Afruit@ from the illegal arrest was the physical
evidence.  Consequently, we believe the
phrase Aany evidence@ was necessarily limited to physical evidence.

Second, to construe the court of appeal=s use of the phrase Aany evidence@ to include appellant=s statement would be contrary to the law existing
from the time of appellant=s arrest until today. 
Our law provides that if a court determines an arrest is illegal and the
defendant subsequently confesses, the court must conduct an analysis to
determine if the taint from the illegal arrest is sufficiently attenuated so
the defendant=s decision to give the statement was an act of free
will.  Bell v. State, 724 S.W.2d
780, 788 (Tex. Crim. App. 1986).  The
First Court of Appeals was certainly aware of Bell and had conducted the
attenuation analysis dictated by Bell as early as 1988 in Cruz v.
State, 764 S.W.2d 302, 305 (Tex. App.BHouston [1st Dist.] 1988, no pet.).  We conclude the First Court of Appeals did
not conduct an attenuation analysis because the question of whether appellant=s statement was free from the taint of his illegal
arrest was simply not an issue in that appeal.

For these reasons, we reject appellant=s argument that his statement was part and parcel of
the Aany evidence@ phraseology employed by the First Court of Appeals.








We now turn to appellant=s second argument under this point of error.  Prior to the admission of appellant=s statement in the instant trial, a hearing was held
outside the presence of the jury.  At
that hearing, everyone worked from the premise that appellant=s arrest was illegal. 
The trial judge then conducted the attenuation analysis discussed above
and concluded the statement was admissible. 
Appellant concedes the trial judge employed the correct factors in
conducting the attenuation analysis.[5]  Appellant simply disagrees with the trial
judge=s conclusion that the statement was an act of free
will attenuated from the taint of the illegal arrest.

The trial judge=s decision to admit or exclude evidence is viewed
under an abuse of discretion standard.  Sells
v. State, 121 S.W.3d 748, 766 (Tex. Crim. App. 2003).  An abuse of discretion occurs when the
decision lies outside the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372,
387-88 (Tex. Crim. App. 1990) (op. on reh=g).  If the
trial judge=s ruling was within the zone of reasonable
disagreement, the appellate court will not intercede.  Id. 
Recently we stated that Aabuse of discretion does not imply intentional wrong
or bad faith, or misconduct, but means only an erroneous conclusion.@  Page v. State,
170 S.W.3d 829, 835 n.4 (Tex. App.BCorpus Christi 2005, no pet.).  In the instant case, the trial court analyzed
each of the Bell factors after hearing the testimony related to
appellant=s illegal arrest. 
We have reviewed that analysis. 
While we may disagree with the weight given to the particular factors
and may have come to a different conclusion, we cannot say the trial judge=s attenuation analysis lies outside the zone of
reasonable disagreement.  Consequently,
the fifth issue is overruled.








III.  Closing
Argument B Guilt Phase.

The sixth issue contends the trial court erred in
permitting the prosecutor to make an improper request for the jury to speculate
about matters not in evidence.  We have
carefully reviewed the complained of argument and hold that it was made in
response to the argument advanced by defense counsel.  Our law is clear that one of the appropriate
purposes of closing argument is to answer the argument of opposing
counsel.  Cantu v. State, 939
S.W.2d 627, 633 (Tex. Crim. App. 1992); Hernandez v. State, 819 S.W.2d
806, 820 (Tex. Crim. App. 1991). 
Accordingly, we overrule the sixth issue.

IV. 
Multifarious Points of Error.

The seventh issue combines several separate
complaints related to the guilt phase of the trial into a single issue and
contends that their cumulative effect requires reversal.  The eleventh issue combines the complaints
raised in the seventh issue with several complaints related to the punishment
phase of the trial and contends their cumulative effect requires reversal.  

A multifarious point is one that embraces more than
one specific ground.  Stults v. State,
23 S.W.3d 198, 205 (Tex. App.BHouston [14th Dist.] 2000, pet. ref'd).  Multifarious points present nothing for
appellate review.  Cuevas v. State,
742 S.W.2d 331, 336 n. 4 (Tex. Crim. App. 1987).  We hold the seventh and eleventh issues are
multifarious. Accordingly, they are overruled.

V.  Admission
of Pen Packet.








The ninth issue contends the trial court erred in
admitting appellant=s Apen packet.@  Appellant
argues that his plea of true to the enhancement allegation rendered the Apen packet@ irrelevant and prejudicial.  The trial judge overruled those objections,
finding the evidence was both relevant and more probative than
prejudicial.  This Court has previously decided
this issue contrary to appellant.  Charleston
v. State, 834 S.W.2d 517, 518-19 (Tex. App.BCorpus Christi 1992, no pet.).  Appellant advances no reason to revisit our
precedent.  Consequently, we overrule the
ninth issue.

VI.  Parole
Instruction

The eighth issue contends the trial judge erred by
instructing the jury on the issue of parole as required by article 37.07,
section 4(a), of the code of criminal procedure.  See Tex.
Code Crim. Proc. Ann. art. 37.07, ' 4(a) (Vernon Supp. 2005).  Appellant argues the instruction misstated
the law and was misleading.  Following
the filing of the briefs in this case, the court of criminal appeals considered
and rejected these arguments in Luquis v. State, 72 S.W.3d 355, 368
(Tex. Crim. App. 2002).  We, of course,
are bound by the holdings of Luguis. 
Because the instant case is indistinguishable from Luguis, the
eighth issue is overruled.

VII.  Closing
Argument B Punishment Phase.

In the tenth issue, appellant contends the trial
court erred by permitting the prosecutor to argue how the law of parole would
be applied to appellant.  The State made
the following argument at the punishment phase:

Now, let me stop and talk to you about the charge for
just a moment so that you can B you probably do understand already, but the Judge
mentioned to you that as far as parole eligibility that the defendant
becomes eligible for parole after he serves one-half of the sentence
imposed or 30 years.  Let me explain that
to you for just a moment.  Let=s say a sentence of 40 years --

 








Appellant objected to this line of argument because
it applied the law of parole to appellant. 
The trial court overruled the objection.

The prosecutor continued: AA 40-year sentence means the defendant becomes
eligible for parole after serving 20 years.@  Again
appellant=s objection was overruled.  The prosecutor then stated:  AA 60-year sentence means he becomes eligible
after serving 30 years.  A sentence of
life or 75 years means he becomes eligible after 30 years.  So, why would I ask you for a life sentence
and a $10,000 fine if he becomes eligible at the same point B.A  This argument
was interrupted by appellant=s objection, which was also overruled.

Appellant contends the State=s argument violated code of criminal procedure
article 37.07, section 4(a), which mandates the instruction complained of in
part VI, supra.  That instruction
provides, inter alia:  AIt is also possible that the length of time for which
the defendant will be imprisoned might be reduced by the award of parole.@  The
instruction further provides that a defendant does not become parole eligible Auntil the actual time served equals one-half of the
sentence imposed or 30 years, whichever is less.@  The
instruction concludes:

It cannot accurately be predicted how the parole law
and good conduct time might be applied to this defendant if he is sentenced to
a term of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.

 

You may consider the existence of the parole law and
good conduct time.  However, you are not
to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant.  You
are not to consider the manner in which the parole law may be applied to this
particular defendant.

 








As we have stated, "our law could not be more clear
that a prosecutor must avoid applying the parole law specifically to the
defendant on trial."  Hawkins v.
State, 99 S.W.3d 890, 900-01 (Tex. App.BCorpus Christi 2003), rev'd on other grounds,
135 S.W.3d 72 (Tex. Crim. App. 2004).  As
seen by the italicized portions of the State=s argument, the prosecutor=s remarks were directed to Athe defendant@ and when Ahe@ would become eligible for parole.  Such personalized references are
improper.  Facundo v. State, 971
S.W.2d 133, 135-36 (Tex. App.BHouston [14th Dist.] 1998, pet. ref'd) (holding
arguments such as:  AFor example, if you assess ten years in prison,  what it says here, he's got to serve
five years flat," and "What the law says here, if the defendant
is sentenced to a term of imprisonment, he will not become eligible for
parole until the actual time served equals one-half of the sentence imposed@ to be improper comments on how the parole law
affected the defendant on trial); Taylor v. State, 911 S.W.2d 906, 914
(Tex. App.BFort Worth 1995, pet. ref'd) (Dauhinot, J.
concurring) ("Why is it important for the jury to understand there is no
practical difference in a sixty-year sentence and a ninety-nine-year sentence
unless they are being asked to apply the parole law to the case before
them?").  Compare Lunn v. State,
753 S.W.2d 492, 494 (Tex. App.BBeaumont 1988, no pet.) (using the phrase Aany defendant@ to make generic argument related to parole was
proper).

Relying on Whiting v. State, 797 S.W.2d 45, 48
(Tex. Crim. App. 1990), the State argues there is no error in quoting or
paraphrasing the jury charge.  With this
general rule we do not disagree, and we further agree this rule extends to the
parole instruction.  See Perez v.
State, 994 S.W.2d 233, 237 (Tex. App.BWaco 1999, no pet.); Taylor, 911 S.W.2d at
911.  However, this general rule does not
authorize prosecutors to apply the parole laws to the defendant on trial.  Perez, 994 S.W.2d at 237; Taylor,
911 S.W.2d at 911.

We hold the complained of argument was improper.  Accordingly, the trial court erred in
overruling appellant=s objection to that argument.








We now turn to the issue of harm.  Generally, error resulting from improper jury
argument is non-constitutional in nature. 
Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2002).  Therefore, we must conduct the harm analysis
prescribed by Rule 44.2(b) of the Texas Rules of Appellate Procedure.  See Tex.
R. App. P. 44.2(b).  Under this
rule, an error Athat does not affect substantial rights must be
disregarded.@  See id.  Substantial rights are affected when the error
had a substantial and injurious influence on the jury's verdict.  Johnson v. State, 43 S.W.3d 1, 4 (Tex.
Crim. App. 2001).  An error that has no
influence, or only a slight influence, on the verdict should be deemed
harmless.  Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). However, if the reviewing court is
unsure whether the error affected the outcome, the court should treat the error
as harmful.  Webb v. State, 36
S.W.3d 164, 182 (Tex. App.BHouston [14th Dist.] 2000, pet. ref'd).  Neither party has the burden of proof under
Rule 44.2(b).  Id.  Rather, the appellate court will examine the
record for purposes of determining harm. 
Id.

To determine the issue of harm in the context of
non-constitutional jury argument error, we apply the three factors recognized
in Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998): (1)
severity of the misconduct; (2) measures adopted to cure the misconduct; and
(3) certainty of conviction absent the misconduct.  Id.








Under the first prong, the severity of the
misconduct is identified with the magnitude of the prejudicial effect of the
prosecutor=s remarks.  Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  The complained of argument informed the jury
that irrespective of the sentence imposed, appellant may well serve far less
time in prison.  A similar argument was
made in Chester v. State, 167 S.W.3d 935 (Tex. App.BAmarillo 2005, pet. ref=d).  That
court determined the argument Acould easily be interpreted as an inducement to
assess a longer term of imprisonment based on factors other than those
permitted by the legislature; indeed the latter expressly prohibited the
consideration of parole in setting punishment.@  Id. at 937.  The same is true of the argument in the
instant case.  We find the jury was more
likely to assess a harsher sentence following the argument than if the argument
had not been made.  Therefore, the
argument was very prejudicial.  And, that
prejudice was magnified by the State=s continued arguments applying the law of parole
specifically to appellant.  Consequently,
we hold the improper argument constituted severe misconduct.  See id.

The second factor considers the measures adopted to
cure the misconduct.  In the instant
case, the trial court overruled appellant=s objections to the improper argument.  The trial court took no curative
measures.  In this setting, the trial
court=s error in permitting the improper argument actually
compounds the harm because, by overruling the objections, the trial court
effectively placed its stamp of approval on the argument.  Good v. State, 723 S.W.2d 734, 738
(Tex. Crim. App. 1987).








Additionally, we do not believe the language in the
jury instruction that the jurors were Anot to consider the manner in which the parole law
may be applied to this particular defendant@ can
be considered a curative measure.  By
definition, a curative measure only occurs after the error; there is
simply nothing to Acure@ until the improper conduct is committed.  The instruction to not consider the
application of the law of parole is read to the jury before the improper
argument is made.  Therefore, the
instruction is not a measure adopted by the trial court to cure the misconduct.  Rather, it is a measure mandated by the
legislature to prevent misconduct.  It
would be a sad irony indeed if the State could, on one hand, violate the
statute thus creating the circumstances which give rise to the error and, on
the other hand, rely on the language within that statute to cure its
misconduct.  Because the trial court took
no corrective measures to cure the misconduct, we hold this factor militates
toward a finding of harm.

Finally, we consider the third Mosley factor
which must be tailored to the punishment phase of a non-capital trial; in this
context, the final factor is the certainty of the punishment assessed absent
the misconduct, that is, the likelihood of the same punishment being
assessed.  Hawkins, 135 S.W.3d at
77.  Appellant was convicted of a
first-degree felony offense.  The
punishment range, enhanced by a prior felony conviction, was imprisonment for
life, or for any term of not more than 99 years or less than 15 years, and a
fine up to $10,000.  Tex. Pen. Code Ann. ' 12.42(c)(1) (Vernon Supp. 2004-05).  The prior conviction was also for a first
degree felony, namely aggravated robbery. 
The instant offense was a brutal crime. 
However, the fatal injuries were not inflicted by appellant, but rather
by his accomplice, Mickey Webb.








At his first trial, the jury assessed punishment at
life.  In the instant case, the
prosecutor asked for a like sentence and a $10,000 fine.  However, the jury did not believe appellant=s participation in the offense warranted that
sentence.  The prosecutor=s recommendation was rejected and punishment was set
at confinement for fifty years and a $10,000 fine.  The jurors took their oaths seriously,
deliberating approximately eight hours before arriving at the punishment
verdict.[6]  The lengthy deliberations indicate the jurors
were uncertain as to what the ultimate punishment would be.  Therefore, we are unable to say with any
degree of certainty that the jury would have assessed the same sentence absent
the misconduct.[7]  Accordingly, we hold this factor militates
toward a finding of harm.

In light of the foregoing analysis of the three Mosley
factors, we hold the error had a substantial and injurious influence on the
jury's verdict.  Johnson, 967
S.W.2d at 417. Accordingly, the error cannot be disregarded.  See Tex.
R. App. P 44.2(b).  We sustain the
tenth issue.

The trial court's judgment of conviction is
affirmed.  However, because we sustain
the tenth issue, the judgment of the trial court is reversed as it relates to
the sentence.  This case is remanded to
the trial court for a new trial on the issue of punishment.  See 
Tex. Code Crim. Proc. Ann.
art. 44.29(b) (Vernon Supp. 2005).

 

 

CHARLES F. BAIRD

Justice

 

Publish.

Tex. R. App. P.
47.3(b).

 

Opinion
delivered and filed

this
the 26th day of January, 2006.











[1] Former Texas Court of Criminal
Appeals Judge Charles F. Baird assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to the government code.  See Tex.
Gov=t Code Ann. ' 74.003 (Vernon 2005).





[2] All emphasis is supplied by the
author unless otherwise indicated.





[3] Rule
607 abandoned the Avoucher
rule@ and
permits either party to impeach its own witness.  Therefore, the State was not prohibited from
offering Law=s
prior inconsistent statement to impeach his testimony.





[4] In fact, the statement was
introduced by appellant as a part of his case-in-chief.





[5]Bell
adopted the four-prong analysis of Brown v. Illinois, 422 U.S. 590
(1975), which prescribes consideration of the following factors in an
attenuation analysis:

 

1) the giving of Miranda
warnings;2) the temporal proximity of the arrest and the confession;3) the
presence of intervening circumstances; and4) the purpose and flagrancy of the
official misconduct.

Id. at 604-05.





[6] The docket sheet reflects the jury
began deliberating at 11:48 a.m. and deliberated continuously, except for
lunch, until 7:02 p.m. at which time the jurors were sequestered.  Deliberations resumed the following day at
9:15 a.m. and concluded with the verdict at 11:30 a.m. 





[7] The requirement of Acertainty@ within this factor prevents
appellate judges from sitting as the thirteenth juror attempting to objectively
review what jurors have subjectively decided.