Mark Roland STALLINGS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00991–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 10, 2001.

Deborah S. Holmes, Huntsville, for Appellant.

Alfred Eugene Hernandez, Huntsville, for State.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.[1]

## OPINION

NUCHIA, Justice.

Appellant, a Texas prison inmate, was charged with one count of aggravated kidnapping and three counts of aggravated assault with a deadly weapon, with six enhancements. The jury found appellant guilty as charged and the six enhancements to be true and assessed appellant two life sentences and two 75–year sentences. We affirm.

## BACKGROUND

Appellant, having a gun that was smuggled into the prison, threatened Officers Deleta Jones, Jerry Bailey, and Frank Love in an attempt to escape. Officers Jones and Love escaped from appellant without injury. Officer Bailey escaped after suffering some injury to his face. Appellant then took Officer Thomas Dorman hostage, handcuffed him, and began to look for a way to escape. After approximately one and one-half hours, it became apparent to appellant that he could not find a way to escape, and he surrendered.

## DISCUSSION

*Challenge for cause*

In his first issue, appellant contends the trial court erred in denying his challenge for cause to venire member Michael Oliphant because Oliphant refused to

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

answer when asked whether he could be a fair juror.

During voir dire, in response to a question regarding whether he could be fair, the following occurred:

Q. (By appellant's counsel) Mr. Oliphant, I know you used to work for TDC.

A. (Laughter.)

Q. Did you work at the Holliday unit?

A. No, but I've got a brother working over there.

Q. What's his name?

A. Captain Oliphant. I also worked for TDC, too, but you know it's just—it's hard for me to sit here and tell you the way I feel about it, because you know, y'all are trying to ask opinions before the case is even presented.

So you know, it's hard for me to say whether you're trying to—the way you're putting it—you know, we ain't even heard the case yet, you know, the evidence. And then you ask us how I'd, you know, feel about the situation. So you know, I haven't even heard the evidence.

Q. I understand. But you have to understand my position.

A. I understand.

Q. You get on the jury and then you decide you can't be fair.

A. I understand. But you understand my position, too, don't you, right?

Q. Yes.

A. So, you know, that's my answer. You know, the case ain't been presented yet.

Q. That's right.

A. For me to tell you would I vote this way or would I vote that way, you know the main fact is, is that we know that something that has happened but it ain't been proven one way or the other. So it's hard for me to tell you that I'd vote yes or no.

Q. But you have to assume nothing's happened till he proves it to you.

A. Well, that's what you're saying; that's your opinion.

Q. Okay.

A. That's your opinion.

Q. Okay. Let me ask you—let me turn it around a little bit.

A. No, no, no.

Q. You're—

A. No, let me turn it around and you put yourself in that position. Just think about if that was you. How would you feel?

Q. Oh, I've been on a panel before. Both sides cut me.

A. No, but like I say, it's hard for me to give you an answer when I haven't even heard the case yet.

Q. Okay, let me give you a different answer, all right—I mean, a different hypothetical. You're an African American man.

A. Right.

Q. If you were a defendant, okay?

A. Right.

Q. And you were on trial for committing a serious felony.

A. Okay.

Q. They were accusing you of committing a serious felony.

A. Okay.

Q. And most of the jurors out there were white individuals; and white people on the jury panel were telling you: "Well I can't tell you if I could be fair to a black man or not till I hear all the evidence in the case."

A. That's their opinion.

Q. Would you—

A. They're entitled to their opinion.

Q. Yes, but would you want them to be on your jury?

A. That's the—the fact remains the same. They're still entitled to their opinion.

Q. Absolutely. And that's what I want to know, is your opinion.

A. Well, like I say, I can't give you my opinion, because I haven't heard the case.

Q. You can't give your opinion on the law?

A. I can't give you my opinion, what I would say, one way or another, because I haven't heard the case.

Q. But you have to be able to say before the case whether you can be fair.

A. That's not being truthful.

Q. You can't tell if you can be fair and impartial?

A. If they present the case, I can base my opinion on what I base my opinion on.

Q. You can have an—

A. I'm not looking for no legalities—technicalities like you trying to ask, "well, 'cause he didn't move that far, could it still be a charge against him?"

Q. No, I just asked your opinion.

A. Well, I'd give my opinion after I had heard the case.

Q. But I need to know your opinion now.

A. Okay, that's it.

Q. But would you want a white juror who said, "I can't tell you whether I can be fair to a black man till after I heard the case"?

A. But you're asking me what has not happened yet. That ain't happened yet.

Q. No, I know; it's called a hypothetical.

A. We ain't having no hypothetical.

Q. I'm trying to use a hypothetical to ask you what your opinion is.

A. I gave you my opinion.

Q. Your opinion is you have no opinion?

A. I can't make no decision until I hear the case—hear what the State has to present and then you present whatever you've got to present.

Q. I don't have to.

A. Well, whatever. Or when they rest and y'all say it's over with, then I will make my decision if they pick me on the jury.

Q. If it came down to an inmate's word against a correctional officer's word?

A. Well, I keep that—that's my personal opinion on that.

Q. But—and what is it?

A. Well, I keep that to myself. You know, I have a right to remain silent.

Q. You're going to exercise your right to remain silent-but you took an oath to tell the truth in here.

A. Well, I'm telling you the truth. I would remain silent on that.

Q. Okay.

At the conclusion of voir dire, appellant challenged Mr. Oliphant for cause, stating that he wouldn't answer the question whether he could be fair. The judge said, "Well, he never really specifically disqualified himself. Really, he just said blah, blah, blah. I'm going to overrule that one and let you fight on that one. I don't think he wanted—all right, what else?" After some discussion regarding whether Mr. Oliphant would follow the law, the judge said, "He said he would—he claimed he would."

A trial court's ruling on a challenge for cause will not be overturned on appeal unless the ruling is an abuse of

discretion. *See Ladd v. State*, 3 S.W.3d 547, 559 (Tex.Crim.App.1999). Appellant argues, in effect, that a trial court's ruling on a challenge for cause is within the discretion of the trial court only when a prospective juror vacillates in his answers, citing *Brown v. State*, 913 S.W.2d 577 (Tex.Crim.App.1996). Such a narrow interpretation of the trial court's discretion is not supported by the case law. The reviewing court also gives deference to the trial court's ruling when the prospective juror's answers are unclear or contradictory. *Maldonado v. State*, 998 S.W.2d 239, 250 (Tex.Crim.App.1999).

In this case, Mr. Oliphant's answers were unclear and confusing. However, he clearly stated several times that he hadn't heard the case yet and could not give his opinion until he heard the case. The trial court could have reasonably concluded that Mr. Oliphant was expressing his intention to follow the law by not forming an opinion until he had heard the case. The trial court was in a position to see and hear Mr. Oliphant as Mr. Oliphant responded to appellant's questions, and we must defer to the trial court's judgment. *See Ladd*, 3 S.W.3d at 559.

We overrule appellant's first issue.

### Questions regarding minimum punishment

In his second issue, appellant contends the trial court erred in not allowing appellant to question venire members about whether they could consider the minimum punishment applicable in appellant's case. Appellant specifically complains that he was not permitted to ask the following four questions:

1. Could you consider the minimum punishment for an inmate you found guilty of using a correctional officer as a shield or hostage?

2. [After stating the elements of aggravated kidnapping], Is there anybody who couldn't consider the minimum punishment—if they found someone guilty of any of those things, you couldn't consider it?

3. How do you feel about considering the minimum punishment for an inmate you found guilty of three counts of aggravated assault, using a deadly weapon, and aggravated kidnapping in one trial?

4. This defendant is being tried for four aggravated cases. Each case carries a minimum punishment and a maximum punishment. If you found him guilty of all four, could you consider the minimum in each case?

The purpose of the voir dire examination is to determine whether the prospective jurors have any biases or prejudices that would prevent them from applying the law to the facts of the case. *See S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex.App.—Houston [14th Dist.] 1996, pet. denied). A question that attempts to discover a juror's views on an issue applicable to the case is proper. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991). However, a voir dire question based on a hypothetical situation that includes extensive facts of the case is improper. *See, e.g., White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981) (question based on factual situation that was accurate statement of the State's case was improper).

When applying these principles to questions regarding the range of punishment, the purpose of the questions is to determine if the prospective jurors have a philosophical bias against assessing the minimum or maximum punishment for a particular crime. Prospective jurors must be able to accept that, in some circumstances, the minimum punishment will be appropriate and, in some circumstances, the maximum punishment will be appropri-

ate. *Johnson v. State*, 982 S.W.2d 403, 406 (Tex.Crim.App.1998).

In the present case, as appellant's counsel began her questioning regarding the range of punishment, she addressed the venire panel as follows:

> Under the law the defendant is entitled to have 12 jurors who believe in the full range of punishment. In order to be a qualified juror you must be able to actually consider—not give—you don't have to tell me, "yeah, I can give the minimum punishment in this case"; no, that's not the law. You have to be able to say that you can consider the minimum punishment to the offense as defined by law.

> Now, what I need to know is, if everyone of you—or if you can't, I need to know that too—could give—could consider the minimum punishment for an inmate you found guilty of using a correctional officer as a shield or hostage.

The prosecutor objected, saying, "She's trying to tie it to the facts of this case," and the trial court sustained the objection.

Appellant's question inquired about considering the minimum punishment for the crime as committed by appellant: an inmate using a correctional officer as a shield or hostage. This question was improper. *See Raby v. State*, 970 S.W.2d 1, 3 (Tex.Crim.App.1998) (holding a trial court does not abuse its discretion by refusing to allow a defendant to ask venire members questions based on facts peculiar to case on trial). Therefore, the trial court did not err in sustaining the State's objection to it.

■ The State did not object to appellant's second attempt to ask about the venire's ability to consider minimum punishment until follow-up questions were asked of one venire member. Counsel stated the elements that constituted aggravated kidnapping, then asked, "Is there anybody who couldn't consider the minimum punishment—if they found someone guilty of any of those things, you couldn't consider it?" When a venire member (hereinafter, Ms. G) held up her hand in response to the question, the following occurred:

> MS. VIOL: Yes, Ms. [G], would you have difficulty considering the minimum punishment under those circumstances?

> MS. G: Yes.

> MS. VIOL: Could you do it?

> STATE: I'll object to her asking whether she would do it. It's an attempt to commit her. And I object to the form of the question. The question should be: In a proper case, could they consider the whole range of punishment?

> COURT: Sustained to the form of the question.

In his objection, counsel for the State mischaracterized the question as *"would you do it,"* rather than *"could you do it."* In context, "do it" clearly referred to "consider the whole range of punishment." The question was proper, and the State's objection should have been overruled.

■ Although sustaining the State's objection was error, it is not reversible because the trial court permitted appellant's counsel to pursue her questioning on the range of punishment, and she elicited information on the issue of whether potential jurors could consider the minimum punishment for aggravated kidnapping. *See Cohn v. State*, 804 S.W.2d 572, 574 (Tex.App.—Houston [14th Dist.] 1991) (permission to explore subject after adverse ruling cured error in sustaining objection to question), *aff'd*, 849 S.W.2d 817 (Tex.Cr.App.1993). After sustaining the objection and discussing the proper wording of the question, the trial court said, "You can ask her if she can consider the minimum punishment for aggravated kid-

napping in a proper case." To this question, Ms. G answered, "No ." Counsel elicited responses to the same question from several other venire members.

Counsel then asked, "How do you feel about considering the minimum punishment for an inmate you found guilty of three counts of aggravated assault, using a deadly weapon, and aggravated kidnapping in one trial?" The trial court sustained the objection to this question.

A defendant is entitled to inquire about the venire's ability to consider the minimum punishment on each count in a case in which a defendant is convicted of multiple counts. See Post v. State, 936 S.W.2d 343, 347–48 (Tex.App.—Fort Worth 1996, pet. ref'd). However, in this case, appellant's question included specific facts of the case: (1) that the defendant was an inmate and (2) that the three counts of assault were aggravated by use of a deadly weapon. By including these facts, appellant tied the question to the facts of the case, and the question was improper. The trial court did not err in sustaining the State's objection to this question.

In attempting to rephrase the question, appellant's counsel said, "This defendant is being tried for four aggravated cases. Each case carries a minimum punishment and a maximum punishment. If you found him guilty of all four, could you consider the minimum in each case?" Again, the trial court sustained the objection to the question. This fourth question was clearly tied to this case by its reference to "this defendant" and "if you found him guilty of all four." The question was not presented on a hypothetical set of facts, and the trial court properly sustained the objection to it.

The trial court did not err in sustaining the State's objections to the first, third, and fourth questions at issue in this appeal. Any error in sustaining the objection to the second question at issue was cured when the trial court permitted counsel to pursue the same question and get the desired information from the venire members. Accordingly, we overrule appellant's second issue.

### Charge error

In his third issue, appellant contends the trial court erred in failing to charge the jury, during the punishment phase, that appellant would not be eligible for parole until he had served one-half of the sentence assessed without regard to accumulation of good-conduct time. See TEX.CODE CRIM. PROC. art. 37.07, § 4(a) (Vernon Supp.2001).

Appellant concedes that the omission of the reference to the accumulation of good-conduct time was harmless in this case because it did not apply to this appellant. Thus, appellant complains of the omission of that portion of the charge regarding eligibility for parole.

No additional evidence was presented during the punishment phase of the trial. The trial court asked if there were any objections to or requests for the court's charge. Appellant's counsel responded, "None from the defense, Your Honor."

In Ly v. State, 943 S.W.2d 218 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd), regarding a similar complaint, we held that a defendant who affirmatively states no objection to a jury charge at trial may not challenge on appeal any error in that jury charge. Id. at 221.

We overrule appellant's third issue.

We affirm the judgment.