Opinion issued December 5, 2002
  










In The
Court of Appeals
For The
First District of Texas




NO. 01-99-01381-CR
NO. 01-99-01382-CR
NO. 01-99-01383-CR




BYRON THOMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause Nos. 800503, 800505, 800504




O P I N I O N

          A jury found appellant, Byron Thompson, guilty of first-degree felony injury
to a child,


 third-degree felony injury to a child,


 and second-degree felony
aggravated assault.


 The jury assessed punishment at 40, two, and 15 years in prison
and fines of $4,000, $2,000, and $4,000, respectively. We address whether the trial
court erred in (1) overruling appellant’s objections to the State’s misstatement of the
law during voir dire, (2) overruling appellant’s challenges for cause, (3) refusing to
allow appellant to repeat a question to three venire members, (4) denying appellant’s
motion to discharge the venire because of cumulative, “fundamental” error, and (5)
including a good-conduct-time instruction in the two injury-to-a-child charges after
having granted appellant’s request to omit the same instruction from the aggravated-assault charge. We also consider whether appellant was harmed by the alleged lack
of a constitutional good-conduct-time instruction for the aggravated-assault charge. 
We affirm.
Facts The three victims—appellant’s sister, T.T., his brother, C.T., and his
mother—testified against appellant.
          Seventeen-year-old appellant was kicked out of his home for stealing his
mother’s car. On December 13, 1999, appellant returned home. He threatened his
mother and his three siblings, nine-year-old C.T., 13-year-old T.T., and younger
brother J.T. Appellant and his friends tried to set the house on fire that same day. 
The mother called the police three times, but eventually allowed appellant back home. 
The next morning, everything seemed normal again, and the mother left all four
children at home while she went to work. 
          While the mother was gone, appellant attacked T.T., choking her. T.T. ran to
a bathroom, but could not close the door before appellant knocked the door in and
stabbed her hand with a knife. Appellant then squeezed T.T.’s head between his legs
so tightly that she could hardly breathe and punched her in the face several times. 
Appellant told J.T. and C.T., who were watching, that he would kill them next. T.T.
got away and locked herself in another bathroom. When she opened the door a few
minutes later, appellant threw in a t-shirt that he had set on fire. The fire drew T.T.
out of the bathroom, and appellant began choking her again. When appellant stopped
choking T.T., she and J.T. ran to the bathroom and locked themselves in.
          After T.T. and J.T. had hidden in the bathroom, appellant hit C.T. on the head
“a lot” of times with a hammer, cut C.T.’s arm with the hammer’s claw so deeply that
his bone showed, and stabbed him in the chest “a lot” with a knife. C.T. ran away to
the bathroom, and T.T. and J.T. let him in. Appellant set fire to another shirt with
lighter fluid and pushed it into the bathroom. The children inside could hardly
breathe and began choking, but appellant, who was laughing, prevented their coming
out for air by holding the door. When appellant finally released the door, T.T. ran
out, and appellant struck her on the head with the hammer. 
          Appellant then made his siblings sit in the living room without treating their
wounds. While the children were sitting there, appellant grabbed C.T., squeezed his
head and neck, and pulled his neck back until C.T. could not breathe. Appellant
made the other children watch as he attacked C.T. After C.T. passed out, appellant
made the others help him drag C.T.’s body to a bedroom. Once in the bedroom,
appellant continued attacking C.T. by stomping hard on C.T.’s head “a lot” of times. 
Appellant then left C.T. in the room, began listening to the radio, and declared, “You
see? I don’t care.” Appellant returned once to C.T. to kick him again.
          After finishing his attack on C.T., appellant told T.T. and J.T. to hold their
mother down when she came home so that he could stab her. Appellant threatened
to kill T.T. and J.T. if they did not help him. Appellant turned down the house lights
in anticipation of his mother’s return.
          As their mother came through the door that night, T.T. ran past her and over
to a neighbor’s house for help. When their mother reached for the light switch,
appellant grabbed her from behind, spun her around, climbed over her after she fell,
and stabbed her seven times in the chest and face with a long kitchen knife, knocking
out her tooth, piercing her mouth through, and slashing her tongue. Appellant called
his mother “awful names” and said he was going to kill her. After appellant bent the
knife blade, he beat his mother’s face with his hands, blackened her eyes, and choked
her. A neighbor came, and appellant ran outside. The neighbor stopped and held
appellant. 
          Houston Police Department Officer Mark Medina came to the scene first. The
officer saw appellant and another male standing in the front yard as he approached
and found appellant’s mother in the house. The mother told Officer Medina that
appellant had caused her injuries. Officer Medina also found C.T. inside: C.T. was
barely conscious, was breathing shallowly, and had a faint pulse. When the officer
went outside again, he saw T.T., who appeared in shock, had a cut hand, and had
blood dripping from the back of her head. Other officers arrived and arrested
appellant. 
 
          There was blood in various places throughout the house. A kitchen-knife
handle lay on the counter, with its blade on the floor nearby. Another bloody kitchen
knife lay outside the door. One bathroom’s door had been ripped off. Burned debris
was in the other bathroom. A nearly empty charcoal-lighter can lay on the floor. A
few days later, the police recovered from the garage a hammer with a bit of blood on
it.
          C.T. remained in intensive care for several days because of the resulting severe
head trauma. T.T.’s head wound had to be stapled together.
          Appellant took the stand in his defense. He did not deny attacking his family. 
Rather, he claimed that he (1) did not remember doing anything that he had been
accused of doing the day before the attacks or hitting T.T. with the hammer, stabbing
C.T. or his mother as many times as he did, or squeezing C.T.’s head between his
legs; (2) did not kick in the bathroom door; (3) accidentally struck T.T.’s hand with
the knife while they were playing; (4) became “frustrated” and lost his temper when
C.T. panicked and started accusing appellant of trying to kill the others; (5) hit,
kicked, and stabbed C.T. because of this frustration; (6) did not intend to kill his
siblings or his mother or to hurt C.T.; (7) did not know what he was doing when he
hurt C.T.; and (8) attacked his mother because “that was the only way out” of various
family problems, including his mother’s allegedly abusive behavior.
Voir Dire
A.      Misstatement of Law During Voir Dire
          In his first issue, appellant contends that the State misstated the law during voir
dire by using a hypothetical, designed to determine whether members of the venire
panel could consider the full punishment range, that included a hypothetical witness’s
punishment recommendation. Appellant claims the misstatement could have led the
jury to believe that punishment-recommendation evidence was admissible. Appellant
further argues that the jury could then have inferred from the absence of such
evidence during punishment that appellant did not present punishment-recommendation evidence because it was unfavorable to him. Appellant’s issue
challenges the trial court’s overruling his objections to this hypothetical.
          After explaining the minimum and maximum punishments for the first-degree
felony offenses, the State asked whether the venire members could consider the full
punishment range “from probation to life in prison.” Some venire members indicated
that they could not consider community supervision. Pursuing this line of
questioning, the State gave a hypothetical that would likely implicate the minimum:
a 13-year-old boy and his father, who is a good parent, but who one day gets angry
at his son and loses control, punches his son in the mouth. The State continued:
 
State:In my hypothetical, consider you had [a] dad [who] did
this. He meant to hit him. He was mad, which wasn’t a
defense. The kid did sustain the injury but dad’s been a
good dad. Mother admits I don’t care if he gets probation.
 
Appellant:Objection. That is inadmissible. Punishment
recommendations are inadmissible in court included in
hypothetical. Inadmissible evidence.
 
Court:Overruled.
 
State:In this hypothetical situation, once again the mother wants
the dad to get probation.
 
Appellant:Again, objection. That’s objection[able]. She’s including
a punishment recommendation [that is] prohibited—it is
prohibited to give punishment recommendations as part of
[the] evidence in a case.
 
Court:That’s overruled.
 
State:In any event, I throw out this hypothetical as a potential
hypothetical of a case involving intentional injury to a
child with serious bodily injury. That’s just one of many
that may be the type of case—may be the only case you
would ever consider a probation for. But I throw that out
because to be a fair and impartial juror you have to be able
to keep an open mind and consider.

(Emphasis added.)
          The law allows the parties to use hypotheticals during voir dire to ascertain
prospective jurors’ views. Pineda v. State, 2 S.W.3d 1, 10 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d). However, voir dire questions or hypotheticals that misstate
the law are improper. See Middlebrook v. State, 803 S.W.2d 355, 360 (Tex.
App.—Fort Worth 1990, pet. ref’d); Parker v. State, 792 S.W.2d 795, 798-99 (Tex.
App.—Houston [14th Dist.] 1990, pet. ref’d). We review the trial court’s ruling on
an objection to a hypothetical used in voir dire for abuse of discretion. Id. at 798.
          As a general rule, a witness may not recommend a particular punishment to the
factfinder. Johnson v. State, 987 S.W.2d 79, 87 (Tex. App.—Houston [14th Dist.]
1998, pet. ref’d); see Sattiewhite v. State, 786 S.W.2d 271, 290 (Tex. Crim. App.
1989) (involving expert testimony). For this reason, the Corpus Christi court of
appeals has concluded that a voir dire hypothetical implying that punishment
recommendations are admissible is improper. See Taylor v. State, 74 S.W.3d 457,
463-64 (Tex. App.—Corpus Christi 2002, pet. granted) (holding trial court erred in
overruling defendant’s objection, on same ground as asserted here, to trial court’s voir
dire hypothetical that was similarly worded to State’s hypothetical here).
          It does not appear that the State intended for this hypothetical to convey a false
impression about the admissibility of punishment-recommendation testimony. 
Nonetheless, the voir dire panel could easily have inferred from the hypothetical that
punishment-recommendation testimony was admissible during punishment. See id. 
To convey that impression would have been a misstatement of the law. Indeed, the
risk of conveying that impression became greater when the trial court overruled
appellant’s objections, which effectively put the stamp of approval on the State’s
hypothetical. See Lee v. State, 971 S.W.2d 130, 131 (Tex. App.—Houston [14th
Dist.] 1998, pet. ref’d). We thus hold that the court abused its discretion in overruling
appellant’s objections. See Taylor, 74 S.W.3d at 463-64. 
          However, we also hold that the error was harmless. A misstatement of law
during voir dire requires reversal only if the misstatement harmed the appellant. See
Kelley v. State, 845 S.W.2d 474, 479 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d). Kelley was decided before the Court of Criminal Appeals adopted the current
harmless-error rule. See id. at 477, 479 (applying former rule of appellate procedure
81(b)(2)); compare Tex. R. App. P. 44.2(a) (“constitutional error”), 44.2(b) (“other
error”) (former rule 81(b)(2)’s successors). Since the new harmless-error rules went
into effect, this Court has analyzed harm resulting from an erroneous ruling on a
prosecutor’s misstatement of the law during voir dire under rule 44.2(b). See Glauser
v. State, 66 S.W.3d 307, 316 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d)
(applying rule 44.2(b) to trial court’s erroneous refusal to grant defendant’s request,
after appellant had objected to prosecutor’s voir dire statement implying appellant
had burden to produce evidence, to instruct venire panel that defendant had no such
burden), cert. denied, 534 U.S. 1129, 122 S. Ct. 1068 (Feb. 19, 2002).
 
          A constitutional error within the meaning of rule 44.2(a) is an error that directly
offends the United States Constitution or the Texas Constitution, without regard to
any statute or rule that might also apply. Shelton v. State, 41 S.W.3d 208, 218 (Tex.
App.—Austin 2001, pet. ref’d); Alford v. State, 22 S.W.3d 669, 673 (Tex. App.—Fort
Worth 2000, pet. ref’d); Tate v. State, 988 S.W.2d 887, 890 (Tex. App.—Austin
1999, pet. ref’d). That is, an error is constitutional only if the correct ruling was
constitutionally required. See Alford, 22 S.W.3d at 673. We conclude that this error
does not fit that definition. See Glauser, 66 S.W.3d at 316; cf. Peak v. State, 57
S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding
misstatement of law in closing argument requires 44.2(b) harmless-error analysis);
Lee, 971 S.W.2d at 131-32 (same); cf. also Martinez v. State, 17 S.W.3d 677, 692
(Tex. Crim. App. 2000) (“[Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998)]’s holding suggests that most comments that fall outside the areas of
permissible argument will be considered to be error of the nonconstitutional variety. 
Comments upon matters outside the record . . . do not appear to raise any unique
concerns that would require us to assign constitutional status.”) (emphasis added). 
Appellant points to no constitutional provision that would have directly required the
trial court to sustain an objection to the State’s misstatement of the law.
 
          We follow Glauser to hold that the trial court’s overruling appellant’s
objections to the State’s misstatement of law was “other error” to be assessed under
rule 44.2(b).


 See id., 66 S.W.3d at 316. Accordingly, we disregard the error unless
the appellant’s substantial rights are affected. Tex. R. App. P. 44.2(b). “A substantial
right is affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict.” King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). After examining the whole record, we may not reverse if we are fairly assured
that the error did not influence the jury or had but slight effect on it. Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see Tex. R. App. P. 44.2(b).
          In Taylor, in which the court held that a very similar error was harmful under
any harmless-error standard, we note that (1) defense counsel stated on the record that
he would not offer any punishment evidence because of the trial court’s erroneous
hypothetical and (2) counsel made an offer of proof as to what punishment evidence
he would have offered but for the erroneous hypothetical. See id., 74 S.W.3d at 462,
467 n.13. Here, in contrast, both appellant and his father testified at punishment. 
Although appellant did advise the trial court that he was not putting on mitigating
evidence at punishment, the record shows that appellant did so for a reason unrelated
to any erroneous impression the State’s voir dire hypothetical might have created. 
Additionally, the State mentioned the hypothetical only twice and did so in a context
indicating that the hypothetical’s focus was to determine which venire members could
not consider the minimum punishment. A later ruling may also have helped, however
slightly, to dispel the false impression that appellant alleges the hypothetical could
have created. During punishment, the State started to ask T.T., “If this jury were to
decide to place your brother on probation . . . .” Appellant objected generally before
the jury, then approached the bench to raise the same grounds as he had raised in voir
dire. The trial court required the State to rephrase the question. Although the jury did
not hear the grounds for appellant’s objection or the bench discussion itself, it did
hear the State attempt, unsuccessfully, over appellant’s objection, to ask the victim
something about probation. Furthermore, nothing shows that the jury considered the
State’s voir dire misstatement in its deliberations. Finally, the circumstances of the
offenses were particularly callous and violent, making it less likely that this one
misstatement influenced the jury’s punishment significantly.
 
          Given these considerations, we are “fairly assured that the error did not
influence the jury or had but slight effect on it.” Johnson, 967 S.W.2d at 417; see
Tex. R. App. P. 44.2(b).
          We overrule issue one.
          We affirm the judgment of the trial court.
Publish. Tex. R. App. P. 47.
The remaining portion of the opinion does not meet the criteria for publication and
is ordered unpublished. See Tex. R. App. P. 47.
_______________________________
          In his ninth issue, appellant claims that the trial court erred in denying his
motion to dismiss the entire venire panel after the State’s misstatement of the law in
voir dire because the error prevented him from intelligently exercising his peremptory
strikes.
          In support, appellant simply incorporates the law from his first issue, adding
that he believes the error as he frames it under his ninth issue is constitutional. See
Tex. R. App. P. 44.2(a) (“court of appeals must reverse a judgment of conviction or
punishment unless the court determines beyond a reasonable doubt that the error did
not contribute to the conviction or punishment.”); cf. Franklin v. State, 23 S.W.3d 81,
83 (Tex. App.—Texarkana 2000, pet. filed) (applying rule 44.2(a) to evaluate
harmfulness of error in refusing to allow defendant to question juror further after
impanelment, when juror had realized, during opening argument, that she had
accidentally answered voir dire question incorrectly).
          Appellant’s only analysis of how he was harmed is to say generally that
“whenever a prosecutor misstates a law and a trial court ratifies the prosecutor’s
misstatement, defense counsel is handcuffed from framing a proper question
concerning that law so as to intelligently exercise peremptory challenges.” He does
not explain how this record shows harm. Neither does appellant explain how the
error as phrased in his ninth issue can be harmful when the error underlying it, for the
reasons discussed above, is not. Therefore, even assuming without deciding that rule
44.2(a) applies, we hold that harm is not shown.
          We overrule appellant’s ninth issue.
B.      Denial of Challenges for Cause
          In his second, sixth, seventh, and eighth issues, appellant claims that the trial
court erred by denying his challenges for cause to venire members Marin, Weisbach,
Hayes, and Gamez. 
          A defendant may challenge a potential juror for cause when that individual has
a “bias or prejudice against any of the law applicable to the case upon which the
defense is entitled to rely, either as a defense to some phase of the offenses for which
the defendant is being prosecuted or as a mitigation therefor or of the punishment
therefor.” Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp. 2002). “Bias
against the law is [the] refusal to consider or apply the relevant law,” which means
the panel member’s “beliefs or opinions ‘would prevent or substantially impair the
performance of his duties as a juror . . . .’” Sadler v. State, 977 S.W.2d 140, 142
(Tex. Crim. App. 1998) (quoting Riley v. State, 889 S.W.2d 290, 295 (Tex. Crim.
App. 1993)). A party may challenge for cause any venire member who cannot
consider the full range of punishment, including the minimum. Von Byrd v. State,
569 S.W.2d 883, 891 (Tex. Crim. App. 1978). “Prospective jurors must be able to
accept that, in some circumstances, the minimum punishment will be appropriate and,
in some circumstances, the maximum punishment will be appropriate.” Stallings v.
State, 47 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2001, no pet.). 
          We review the trial court’s ruling on a challenge for cause for abuse of
discretion. King v. State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000). A trial court
does not abuse its discretion in denying a challenge for cause to a venire member who
gives equivocal, unclear, or contradictory answers on how he might answer a
punishment issue. See Sattiewhite, 786 S.W.2d at 281; Stallings, 47 S.W.3d at 174;
see also Colburn v. State, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998).
          Appellant moved for community supervision in each cause. During voir dire,
the State and appellant asked the prospective jurors whether they could consider,
under appropriate circumstances, recommending community supervision in a first-degree-felony case involving serious bodily injury to a child.


 Thirty-two venire
members stated that they could not consider community supervision in such a case. 
The trial court granted appellant’s challenges for cause on 27 of these venire
members, but asked to speak to the five of these who remained—including Marin,
Weisbach, Hayes, and Gamez.
          After the trial court questioned the five venire members, it denied appellant’s
challenges for cause on each. The State used a peremptory strike on one of the five
venire members. Appellant then used three peremptory strikes on Marin, Hayes, and
Gamez. The trial court denied appellant’s request for more peremptory strikes. 
Weisbach was seated on the jury, as were three other venire members whom appellant
identified as being objectionable and on whom appellant stated he would have used
the additional peremptory strikes.
 
          Following are the pertinent portions from the trial court’s questioning of Marin,
Weisbach, Hayes, and Gamez:
Marin
Court:Hi. I need to make—I need to need to make sure I
understand something. There was some question asked
about the full range of punishment.
 
Marin:Uh-huh. 
 
Court:I just need to make sure I understand you. The law says
you have to be able to keep an open mind until you hear all
the facts and determine whether or not the facts are
extraordinary in one way or the other, minimum or
maximum.
 
Marin:Right.
 
Court:The question is can you keep an open mind until you hear
the facts to determine where the line is in the range of
punishment?
 
Marin:Yes.

Weisbach
 
Court:When I talked to you, you said that you could keep an open
mind until you heard the facts of the case and you could
consider the full range of punishment.
 
Weisbach:That’s correct.

 
Court:And gave your word you can do it. Is that still the way it
is? Wait until you hear the facts of this case to determine
whether or not they’re extraordinary one way or
extraordinary—
 
Weisbach:Sure.
 
Court:So, you could keep an open mind to the full range of
punishment?
 
Weisbach:Yes.
 
Court:You can listen to the evidence and base your decision on
the evidence heard? 
 
Weisbach:I would.
 
Court:Have a seat.

Hayes
 
Court:Now, when I talked to you earlier you gave your word that
you could wait until you heard the evidence and the facts
in this case to determine what the fair punishment would
be. Remember doing that?
 
Hayes:Yes.
 
Court:Okay. You said you’d wait. You don’t know what the
facts are. You’d wait until you heard the facts.
 
Hayes:Uh-huh.
 
Court:And if it was extraordinary one direction that would be one
thing and extraordinary in another direction that would be
another thing but you could consider the full range of
punishment as explained to you.
 
Hayes:Right.
 
Court:Is that still the case? Would you wait until you hear the
facts of the case and determine what a fair punishment
would be?
 
Hayes:Sure.
 
Court:Minimum to maximum. 
 
Hayes:Yes. But he gave an example in which the reason I raised
my hand up is give [sic] probation because he gave an
example of guilty verdict that I could not give probation
on.
 
Court:Okay. Well, what I’m saying is you’d have to find the
person guilty.
 
Hayes:Correct.
 
Court:To be able to consider probation.
 
Hayes:That’s correct.
 
Court:He gave a specific fact.
 
Hayes:Yes. Yes.
 
Court:What I’m saying is no specific example I can think of,
would you keep an open mind consider the maximum and
minimum to determine whether or not to give the minimum
or maximum?
 
Hayes:Yes, sir.
 
Court:All right. Have a seat.
 

Gamez
 
Court:Mrs. Gamez, I need to ask you a couple of questions. 
When I was speaking to you earlier this afternoon—
 
Gamez:Uh-huh.
 
Court:—I asked you if you could give me your word—
 
Gamez:Uh-huh.
 
Court:—that you would consider the full range of punishment. 
Wait until you hear the facts of the case to determine what
would be fair in punishment.
 
Gamez:Yes.
 
Court:You said you could do it. Can you still wait until you hear
the facts of the case to determine whether or not they’re
extraordinary one way or another to determine what the
proper fair punishment is?
 
Gamez:Well, I feel if you do the crime you got to do the time.
That’s the way I feel.
 
Court:That’s all right. I understand that. You don’t know
whether or not, first of all, what the facts of this case are.
 
Gamez:No.
 
Court:And if the case—someone may technically do a crime
which is actually a crime—
 
Gamez:Uh-huh.
 
Court:—under the laws of the State of Texas but not be as
punishable as another person who commits the crime more
severely. See, there are different ways to commit a crime.
Some may be in some situation the least severe way to
commit a crime. There are some ways most severe. And
you don’t know whether this is a least or most severe.
 
Gamez:No.
 
Court:So, my question is: Can you keep an open mind and wait
until you hear th[e] facts to determine whether it’s least
severe or most severe or somewhere in between? And if it
is the most severe, then you deal with it that way, then least
severe deal with it that way in a fair manner? Can I have
your word you that you’ll keep an open mind?
 
Gamez:I can keep an open mind, yes.
 
Court:To the full range of punishment. If it deserves the
minimum, you give him the minimum. If it deserves the
maximum, you give the maximum.
 
. . .
 
Court:If it’s the least severe consider the minimum if it’s the most
severe consider the maximum. Wait until you hear what
the facts are?
 
Gamez:Yes.
 
Court:Say yes or no positive.
 
Gamez:Yes.
 
Court:All right. Have a seat.

          The record shows that all four venire members agreed to keep an open mind on
the full range of punishment, including the minimum, until they heard the facts. The
trial court and the State had already told the venire panel that the minimum
punishment included community supervision. Appellant responds that the trial
court’s questions could not rehabilitate Marin, Weisbach, Hayes, or Gamez because
the trial court referenced only the minimum punishment, whereas appellant
specifically referenced community supervision. We disagree. Despite the trial
court’s questioning in only the general terms of minimum punishment, the venire
panel already knew, from the court’s and the State’s earlier statements, that the
minimum punishment included community supervision. The Court of Criminal
Appeals has suggested that a proper question to determine bias against the law is
whether the panel member “can fully and fairly consider the entire range of
punishment, including the minimum and maximum” when “the facts justify it and the
law allows it . . . .” Sadler, 977 S.W.2d at 142. This is what the trial court asked. 
Therefore, when comparing the four venire members’ answers to appellant’s
questions with their answers to the trial court’s questions, we can at most say that
those answers were contradictory, unclear, or vacillating. Accordingly, we must defer
to the trial court’s decision. See Stallings, 47 S.W.3d at 174. 
          We overrule appellant’s second, sixth, seventh, and eighth issues.
C.      Denial of Request to Repeat a Voir Dire Question
          In his third, fourth, and fifth issues, appellant claims that the trial court erred
in preventing him from repeating the community-supervision question that he had
asked Weisbach, Hayes, and Gamez before the trial court rehabilitated them.
          Again, we review for abuse of discretion. See Dinkins v. State, 894 S.W.2d
330, 345 (Tex. Crim. App. 1995); Bolden v. State, 73 S.W.3d 428, 430 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). The trial court abuses its discretion
when it limits a proper question concerning a proper area of inquiry. Dinkins, 894
S.W.2d at 345; Wright v. State, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000). A
proper question is one that seeks to discover a venire member’s views on an issue
applicable to the case. Bolden, 73 S.W.3d at 430. A trial court does not abuse its
discretion, however, by restricting voir dire in a few limited circumstances, including
when the questions are repetitious or duplicative. See Dinkins, 894 S.W.2d at 345;
Guerra v. State, 771 S.W.2d 453, 467 (Tex. Crim. App. 1988).
          After Weisbach, Hayes, and Gamez had responded that they could consider the
full punishment range depending upon the facts, appellant sought to ask each one
again whether he or she could consider community supervision in a case involving
first-degree injury to a child. The trial court denied appellant’s request to repeat this
question. The trial court would not have abused its discretion if it refused this
question for being repetitive of an earlier one. See Guerra, 771 S.W.2d at 467; King,
17 S.W.3d at 22. Moreover, appellant’s merely having repeated his question would
not have changed our holding. For example, had appellant repeated this question, the
worst-case scenario for appellant would have been the venire members’ answering
that they could consider community supervision. That answer would have been fatal
to appellant’s challenge. Similarly, the best-case scenario for appellant would have
been the venire members’ repeating the substance of their original answers. Even
under the best-case scenario, we would still be left with conflicting answers, which
means that we would still have to defer to the trial court’s determination.
          We overrule appellant’s third, fourth, and fifth issues.
D.      Fundamental Error
          In his tenth issue, appellant argues that he was deprived of a fair trial by an
impartial jury—which he claims is fundamental error not requiring an
objection—because of the cumulative effect of (1) the State’s misstatement of the law
(first and ninth issues), (2) the trial court’s denial of appellant’s challenges for cause
(second, sixth, seventh, and eighth issues), (3) the trial court’s denial of appellant’s
request to repeat the community-supervision question (third, fourth, and fifth issues),
(4) the trial court’s allegedly improper voir dire remarks, and (5) the State’s use of an
improper commitment question.



          1.       Bases Already Decided Against Appellant
          We have already held that the first three bases of appellant’s fundamental-error
challenge were either not erroneous or not harmful. Accordingly, those three bases
cannot support appellant’s fundamental-error challenge. We thus address only the
fourth and fifth bases of appellant’s challenge—the trial court’s voir dire remarks and
the State’s use of a fact-specific hypothetical.
          2.       The Trial Court’s Voir Dire Remarks
          Appellant contends that the trial court’s opening remarks at voir dire
concerning punishment improperly presupposed appellant’s guilt:
Court:But as a—in a general term, if the State proves each and
every element of the offense in the indictment beyond a
reasonable doubt, you as a jury have a duty to find the
defendant guilty. If the State fails to prove each and every
element of the offense listed in the indictment beyond a
reasonable doubt, you as a jury have a duty to find the
defendant not guilty. That is your role, okay. In a nutshell
you’re using your common sense and your powers of
observation, will sit in this jury box, listen to evidence
from that witness stand, determine using your experience
what you believe and what you don’t. You will take the
law that I give you based on the observations that you
made in your common sense and life experience and your
perspective you will determine whether or not the State has
met its burden of proof as to each and every element. 
That’s your job in the guilt and innocence phase. Now, in
a situation where you, based on all that, have determined
that the State has proved its case beyond a reasonable
doubt and you have followed your oath as a juror and
found the defendant guilty, you then will look at the
punishment phase of the trial. Now the law says that in
any case—any first-degree felony listed in the Penal
Code—bless you—in these first-degree felonies listed in
the Penal Code that the legislature has set a range of
punishment. An area from which a jury must choose the
proper punishment. And in this situation, in the State of
Texas, the Legislature has set the broadest range of
punishment. And the Legislature has said if someone has
never before been convicted of a felony in this state or any
other state in these United States or any court of the United
States, then they are [sic] eligible for probation. That
means under some set of circumstances it might be the
right thing to do. Okay. It’s also said that, you know, some
set of circumstances the maximum that they might receive
is life in the penitentiary. Again, anyone know the facts of
this case?
 
(No response.)
 
Court:All right. Everyone has agreed with me that you don’t. So,
where would the facts of this case lie within this broad
range of punishment? Where they belong, don’t know. Do
you? You won’t know until you hear them, will you? So,
the law requires for you to be able to keep an open mind
and say, “show me what you got. Show me what the facts
are. I’ll keep an open mind until I hear and determine
where they fall in this broad range.” Is anybody here who
cannot do that? Can I get your word of honor you will
keep an open mind until you hear the facts of the case and
determine where they lie?
 
(Venire persons raise hands.)
 
Venire Member:I won’t. Not with a child involved.
 
Court:Okay. I’ll let the attorneys talk to you about that. It is
important you understand that you be able to consider the
full range of punishment. There are about four or five
people who raised their hands. Can I get the word of honor
of everyone else you can keep an open mind until you hear
the facts to determine where these cases fall in this range
of punishment?
 
Appellant:Objection, Your Honor. That predisposes these cases
either to be found guilty. The question you asked
presupposes he’ll be found guilty. And there is no
presupposition because he has pled not guilty in these
cases.
 
. . .
 
Court:I have stated on the record everything that I am talking
about only deals with the situation in which the State has
proved each and every element of the offense beyond a
reasonable doubt. I am not presupposing anything.
 
Appellant:And I don’t agree with what the Judge said. The manner in
which the question was phrased by asking them about the
facts of this case and way they felt on range of punishment
presupposes the defendant found guilty. And that’s the
only thing I’m saying. I didn’t say the Court expressly
made the statement. As the Court said, I’m talking
presupposing found guilty, presupposing the way the
question is asked. And that was what my objection was.
 
Court:All right.
 
Appellant:The objection is that it deprives my client of impartial jury.
 
Court:All right.
 
Appellant:Have a ruling?
 
Court:Yes, that’s overruled.

(All emphasis added.)

          Appellant claims that the underlined statements improperly presupposed his
guilt. We disagree. The italicized portions quoted above clearly show that the trial
court instructed the jury that it would reach punishment only if it first found that the
State proved each element of the offenses beyond a reasonable doubt. The trial
court’s comments did not presuppose appellant’s guilt. Even if they had, the trial
court cured any error by stating, immediately after appellant’s objection, that
“everything that I am talking about only deals with the situation in which the State
has proved each and every element of the offense beyond a reasonable doubt. I am
not presupposing anything.” Accordingly, we hold that the trial court’s voir dire
remarks cannot support appellant’s challenge.
          3.       The State’s Alleged Commitment Questions
           Appellant next contends that the State improperly attempted to commit the
panel using fact-specific hypotheticals. Specifically, appellant contends that the State
attempted to commit venire members to factual situations involving (1) injury with
a hammer and (2) “a punch, a kid, a mouth, lost teeth, a hurt jaw and a big swollen
jaw.”
 
          Initially, we note that appellant does not assert that these two hypotheticals, if
they were improper, by themselves can support his fundamental-error challenge. 
Rather, he argues that these two hypotheticals, when combined with the other four
bases mentioned above, deprived him of an impartial jury and thus support his
challenge. We have already held that the other four bases on which appellant relies
for his fundamental-error challenge were either not error or not harmful. That leaves
only these two hypotheticals, rather than multiple errors.
          Even assuming that these hypotheticals alone could support appellant’s
challenge, we hold that they were either not improper or not harmful. With regard to
the hypothetical in which the State described a child’s facial injuries sustained by a
punch, the State was using this hypothetical to determine who could consider the
minimum punishment. Appellant’s only objection was that that hypothetical did not
describe serious bodily injury. He did not object that this was an improper
commitment question. Accordingly, it appears that even appellant did not consider
this to be improper commitment at the time.
          With regard to the hypothetical involving a hammer, the record shows that the
venire members themselves injected the term into the discussion. Upon the State’s
further questions about the minimum punishment, which did not mention a hammer,
venire member number 27 responded that he could not consider community
supervision for a child’s injuries resulting from a knife or a hammer. Additionally,
when asked merely whether she could not give community supervision “under any
circumstances,” venire member number 35 volunteered, “No, not with a hammer and
knife, no.” Up until this point, the State had never used the words “knife” or
“hammer.”


 
          Additionally, the State immediately followed up venire member number 27’s
answer by asking, “Even without the same facts . . . [?]” (Emphasis added.) This
follow-up question shows that the State was trying to do the opposite of committing
the venire member to any facts involving a hammer. It was only after juror number
35 had injected into the discussion the idea of injury involving a hammer and knife
that the State finally used the term hammer: “Let me throw out there, how about the
same situation. Dad happened to be working in the garage with [a] hammer and
turned around and hit [the son’s] face with the hammer?” If anything, it appears the
State was trying to prevent venire member number 35 from committing to the factual
scenario the venire member had created. Given these circumstances, we doubt that
the State’s one mention of a hammer in response to two venire members’ earlier uses
of the term constituted an improper commitment question. Compare, generally,
Standefer v. State, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (holding commitment
questions commit prospective juror to resolve, or to refrain from resolving, an issue
in certain way after learning particular fact); compare also Allridge v. State, 850
S.W.2d 471, 480 (Tex. Crim. App. 1991).
          Additionally, the line of questioning that included both of the objected-to
hypotheticals was posed to, or was offered in response to answers by, venire member
numbers 27, 28, 32, 34, 35, 38, 40, 41, 42, 44, 50, 53, and 58, who had indicated that
they could not consider community supervision under any circumstances. The trial
court later sustained appellant’s challenges for cause to each of these jurors. None
of them served on the jury. Given this fact, plus the voir dire discussion’s entire
context, it is doubtful that either hypothetical could have harmed appellant under
either harmless-error standard. See Tex. R. App. P. 44.2.
          Because appellant has not shown that error or harm resulted from any of the
five actions of which he complains, these actions cannot cumulatively result in
fundamental error. 
          We overrule appellant’s tenth issue.
Good-Conduct-Time Instruction
          In his eleventh issue, appellant contends that the trial court erred in including
a required good-conduct-time instruction in the two injury-to-a-child punishment
charges after having granted appellant’s request to omit that same instruction from
the aggravated-assault punishment charge. See Tex. Code Crim. Proc. Ann. art.
37.07, § 4(a) (Vernon Supp. 2002) (mandating such instruction for felonies like
appellant’s). Appellant speculates that, because the good-conduct-time instruction
was included in two of the charges, the jury might have considered that instruction
in its deliberations on the third charge, despite that instruction’s not appearing in the
third charge. Appellant argues that, alternatively, the trial court should have added
an instruction in the three charges that the charges were “mutually exclusive.” See
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(b) (Vernon Supp. 2002) (“[T]he court
shall give such additional written instructions as may be necessary . . . .”).
          First, all three charges already included the following instruction: “You are
further instructed that in fixing the defendant’s punishment, which you will show in
your verdict, you may take into consideration all the facts shown by the evidence
admitted before you in the full trial of this case and the law as submitted to you in this
charge.” (All emphasis added.) This was an instruction to consider the law as
recited only in the charge specific to the particular offense. We presume that the jury
followed that instruction, absent a showing to the contrary. See Luquis v. State, 72
S.W.3d 355, 366-67 (Tex. Crim. App. 2002). Nothing shows that the jury either did
not follow the instruction quoted immediately above or that it considered the good-conduct-time instruction in the aggravated-assault case. Additionally, when appellant
explained the good-conduct-time instructions during closing argument, he made it
clear that he was discussing only the injury-to-a-child charges. Given these
circumstances, we decline to speculate on whether the jury did as appellant suggests. 
See Almanza v. State, 686 S.W.2d 157, 171, 174 (Tex. Crim. App. 1984) (upon
review of objected-to erroneous charge, appellate court reviews for “some harm,”
meaning actual, not theoretical, harm); accord Medina v. State, 7 S.W.3d 633, 643
(Tex. Crim. App. 1999); cf. Luquis, 72 S.W.3d at 367-68.



          Second, the record shows that appellant urged omitting the entire good-conduct-time instruction from the aggravated-assault charge because that instruction
was unconstitutional as applied to him for that offense. On appeal, appellant relies
on this Court’s holding in Jimenez v. State for the same proposition. See 992 S.W.2d
633 (Tex. App.—Houston [1st Dist.] 1999) (“Jimenez I”), aff’d on other grounds, 32
S.W.3d 233 (Tex. Crim. App. 2000) (“Jimenez II”). In Jimenez I, this Court held that
the article 37.03, section 4(a) good-conduct-time instruction, although required for
certain felonies, violated due process and due course of law as applied to defendants
whose crimes—like appellant’s aggravated-assault offense—made them ineligible for
early release based on accrual of good-conduct time. See Jimenez I, 942 S.W.2d at
638; accord Bradley v. State, 45 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.]
2001, pet. ref’d) (declining to revisit holding of Jimenez I). This Court has since
overruled both Jimenez I and Bradley to hold that the good-conduct-time instruction
is constitutional as applied to such defendants. See Bui v. State, 68 S.W.3d 830, 834,
841, 843-44 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The Court of Criminal
Appeals has since held likewise. See Luquis, 72 S.W.3d at 365-66. Therefore, it
would not have been error to have included this instruction in all three charges.


 
Appellant cannot be harmed by an instruction that is mandatory and constitutional. 
See Luquis, 72 S.W.3d at 363, 365. Accordingly, even were we to speculate whether
the jury considered the good-conduct-time instruction when considering the
aggravated-assault charge, appellant cannot show actual harm. 
          We overrule appellant’s eleventh issue. 
          In his twelfth issue, appellant contends that the he was denied due process, due
course of the law, and equal protection by the lack of an available constitutional
good-conduct-time instruction for the aggravated-assault charge.
          Appellant did not object on this ground below with respect to his aggravated-assault charge.


 See Tex. R. App. P. 33.1. Neither did he ask the trial court to
fashion an alternative, constitutional instruction for that charge. Rather, appellant
asked simply that the entire instruction be removed. The trial court complied. 
Appellant received what he requested. Moreover, we have already held that the
article 37.07, section 4(a) instruction is constitutional. See Luquis, 72 S.W.3d at 363,
365; Bui, 68 S.W.3d at 834, 841, 843-44. There is thus neither error nor harm.
          We overrule the twelfth issue.
Conclusion
          We affirm the judgment of the trial court.





     Tim Taft
     Justice

Panel consists of Justices Taft, Alcala, and Price.



Publish in part. Tex. R. App. P. 47.