NO. 07-10-00174-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 29, 2010

VICTOR HUFF, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-426,874; HONORABLE CECIL G. PURYEAR, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

A Lubbock County jury found appellant, Victor Huff, guilty of driving while intoxicated, a third or greater offense.[1]  Following a punishment trial to the bench, the trial court imposed a ten-year sentence.  Appellant timely appealed his conviction, contending that the State improperly shifted the burden of proof to him during voir dire, that the State engaged in improper jury argument, and that the trial court erred by refusing to include a proposed instruction on alternate causes for loss of mental or physical faculties.  We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003); see also id. § 49.09(b)(2) (Vernon Supp. 2010) (making third or greater offense a third-degree felony).

## Factual and Procedural History

On August 1, 2009, appellant rear-ended a pickup truck driven by Dustyn Blasig. Blasig noted that appellant was quite unsteady on his feet following the accident. Appellant provided Blasig with his insurance information and his driver's license, and Blasig called 911. They began waiting for law enforcement to arrive. According to Blasig, after some time waiting, the still unsteady appellant went behind his car and urinated. After about an hour, appellant explained that he needed to leave and did so, leaving his insurance papers with Blasig. About ten minutes after appellant left the scene, Officer Christopher Claybrook of the Lubbock Police Department arrived.

As Blasig gave his account of the event, he noticed appellant driving by on a nearby road. Parts of appellant's damaged car were sparking as they scraped the road, and, apparently, he was honking his horn as he drove. Blasig alerted Claybrook, who then began pursuit of appellant. Claybrook stopped appellant to investigate whether he was intoxicated, as Blasig's account of appellant's behavior suggested to Claybrook.

When Claybrook approached appellant's vehicle, he noticed the odor of ingested alcohol and appellant's "thick-tongued and slurred" speech. Appellant admitted to having consumed four beers. Claybrook administered standardized field sobriety tests, and, because appellant's performances on those tests indicated he was intoxicated, Claybrook arrested him. Claybrook read him the mandatory statutory warnings, and appellant refused to provide a breath specimen.

Appellant was charged with driving while intoxicated, a third or greater offense. The jury found him guilty, and the trial court assessed a ten-year sentence. He timely

appealed said conviction to this Court, bringing three points of error. He contends that the State impermissibly shifted the burden of proof to him during voir dire, that the State engaged in improper jury argument, and that the trial court erred by refusing to instruct the jury on alternate causes for loss of mental or physical faculties.

Shifting the Burden of Proof in Voir Dire

Appellant complains of the following exchange between the State and the venire:

STATE: When the officer asks that person, "Are you going to give a specimen of your breath," who says "Yes" or "No"?

VENIREMAN: The Defendant.

STATE: Okay. And when they say "No," whose fault is it we don't have that evidence?

VENIREMAN: Theirs.

STATE: Okay. And that comes back to—here is my question for everybody. Is anybody going to hold it against the State if we don't have a breath test? Because, you see, there are going to be those circumstances where we don't have a breath test because the defendant refused to give one. Okay?

Anybody say, "I've got to have a breath test?"

Or can everyone say, "The law gives us three ways to determine intoxication, loss of mental, loss of physical, or a breath alcohol concentration?"

Appellant concedes that no objection was lodged to this line of questioning by the State. Indeed, our review of the record confirms that no such objection was made.

Generally, for a complaining party to preserve error for appellate review, the record must reflect that the party raised the issue with the trial court in a timely and specific request, objection, or motion. TEX. R. APP. P. 33.1(a); Griggs v. State, 213

3

S.W.3d 923, 927 (Tex.Crim.App. 2007). More specifically, contentions that the State engaged in improper voir dire questions generally do not present us with fundamental error such that we can review the issue presented when it was not raised in the trial court; to preserve error regarding improper voir dire questions, a party must make a timely, specific objection at the earliest possible opportunity. See Penry v. State, 903 S.W.2d 715, 741, 764 (Tex.Crim.App. 1995) (en banc) (per curiam); Ross v. State, 154 S.W.3d 804, 807 (Tex.App.—Houston [14th Dist.] 2004, pet. ref'd).

With respect to appellant's assertion that the alleged error is fundamental error, we note that appellant does not direct us to any authority that expressly supports his position. However, we acknowledge that the issue he raises does bear some resemblance to the issue addressed in Blue v. State, 41 S.W.3d 129, 129–33 (Tex.Crim.App. 2000) (plurality op.). In Blue, the court held that the trial court's comments to the venire tainted the presumption of innocence by revealing that the defendant had seriously considered entering into a plea agreement and that the trial court was frustrated with the time the defendant took in his decision and would have preferred that the defendant have pleaded guilty. Id. at 130, 132. The Blue court held that the defendant need not have objected to such comments, that they amounted to fundamental error of constitutional dimension. Id. at 132. Notably, the Blue court also emphasized that the comments came from the bench, that it was the trial court imparting this information to the venire:

> In this case, the judge's comments imparted information to the venire that tainted the presumption of innocence. A juror who knows at the outset that the defendant seriously considered entering into a plea agreement no longer begins with a presumption that the defendant is innocent. A juror

4

who hears the judge say that he would have preferred that the defendant plead guilty might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing.

Id. So, the source of the alleged error in the instant case is distinguishable from the error addressed in Blue.

Here, appellant contends that the State, rather than the trial court, improperly shifted the burden of proof to him. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that every state criminal conviction be supported by evidence that a rational trier of fact could find sufficient to prove all the elements of the offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 362–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Coit v. State, 808 S.W.2d 473, 475 (Tex.Crim.App. 1991); see also TEX. PENAL CODE ANN. § 2.01 (Vernon 2003) (codifying the requirement that "[a]ll persons are presumed innocent and no person may be convicted of an offense unless each element is proved beyond a reasonable doubt"). So, it could be said that appellant's contentions go to the absolute systemic requirement that a defendant be convicted only on proof beyond a reasonable doubt. See Mendez v. State, 138 S.W.3d 334, 341 (Tex.Crim.App. 2004) (holding that error preservation requirement does not apply to two types of complaints: waivable-only rights and absolute systemic requirements). To the extent we are bound by Blue's plurality opinion and to the extent Blue could apply to alleged error by the State rather than the trial court, appellant may not have been required to object to such questions to preserve for our review his complaint that the State's questions shifted the burden of proof. 41

5

S.W.3d at 132. We, nevertheless, find the alleged error in the instant case further distinguishable, in terms of degree or impact, from the error addressed in Blue.

From our review of the record of voir dire, we observe that the State made clear at several points during voir dire that *it* bore the burden of proving appellant's guilt beyond a reasonable doubt. For instance, the State explained that "[i]n our criminal justice system[,] the State has the burden of proof. It's my job to prove the case." The State continued to discuss, at some length, the presumption of innocence and the State's burden of proof, describing it at one point as "the highest standard in our legal system." Defense counsel seemingly acknowledged the State's efforts in discussing the burden of proof beyond a reasonable doubt when he sought to reemphasize the placement of the burden: "We talked about beyond a reasonable doubt and we know that's the burden of proof that the State is going to have to satisfy to convict [appellant] of any crime." Further, the trial court had explained at the beginning of voir dire that "in a criminal case in the State of Texas, the State has the burden of proof. And that burden of proof is styled 'beyond a reasonable doubt.'"

The portion of voir dire of which appellant complains is more in the nature of an explanation of the law. The law permits the State to introduce evidence of breath or blood tests, and the State was explaining why it would not have such evidence in this case. See TEX. TRANSP. CODE ANN. § 724.063 (Vernon 1999); see also id. § 724.061 (Vernon 1999) (making admissible a defendant's refusal of request to take breath or blood specimen). The purpose of voir dire examination is to determine whether prospective jurors hold biases or prejudices that would prevent them from applying the

6

law to the facts of the case.  Stallings v. State, 47 S.W.3d 170, 174 (Tex.App.—Houston [1st Dist.] 2001, no pet.).  That said, voir dire questions designed to discover a prospective juror's views on an issue applicable to the case are proper.  Id.

We conclude that the State's comments, when read in context, did not shift the burden of proof such that appellant was denied his due process right to a fair trial.  See Runnels v. State, No. AP-75,318, 2007 Tex.Crim.App. Unpub. LEXIS 377, at *20 (Tex.Crim.App. Sept. 12, 2007) (viewing trial court's comments "as a whole" and concluding that earlier description of the beyond a reasonable doubt standard indicated that trial court's comments did not "trivialize" the State's burden of proof).  From our review of the record, it is clear that the State, defense counsel, and the trial court impressed upon the venire that the burden of proof beyond a reasonable doubt lies exclusively with the State and does not shift to a defendant under any circumstances.

Accordingly, the State's questioning did not rise to the level of fundamental error of constitutional dimension and, thus, appellant was required to timely and specifically object to the cited comments to preserve the issue for appeal. See Blue, 41 S.W.3d at 132; Marshall v. State, 312 S.W.3d 741, 744 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd).  Any non-fundamental error associated with the State's questions during voir dire was not preserved for our review.  We, therefore, overrule appellant's first issue.

Improper Jury Argument

Citing Mosley v. State, 983 S.W.2d 249, 258–59 (Tex.Crim.App. 1998), appellant contends that, in its closing argument to the jury, the State struck at appellant over the

7

shoulders of defense counsel.  He maintains that the following statement implied that the duty of defense counsel was "less than honorable":

> It's a widely-held principle that everybody in this courtroom knows is that a defendant, no matter what the evidence may be against him, has the right to a competent and passionate defense.  After sitting here, you have seen, there is no doubt, the Defendant has availed himself of that.  He's had a competent, he's had a passionate defense.  But there is also a widely-held principle that says that sometimes there are cases that aren't defensible.  Sometimes the evidence is such that all that a Defense Attorney can do is point away from the evidence.  And that's exactly the situation you have here.

Appellant concedes that the record does not show that an objection was lodged in response to the State's argument.  Our review of the record confirms that no such objection was made.  Appellant again asserts that the alleged error is fundamental.  However, contentions that the State struck at a defendant over the shoulders of counsel have not been treated as fundamental error such that those contentions need not be preserved for our review.  See Threadgill v. State, 146 S.W.3d 654, 667 (Tex.Crim.App. 2004); Stephenson v. State, 255 S.W.3d 652, 659 (Tex.App.—Fort Worth 2008, pet. ref'd).  We find no authority to support the conclusion that the alleged error is fundamental.  See Mendez, 138 S.W.3d at 341.

Because any error associated with the State's jury argument was not preserved for our review, we overrule appellant's second issue.  See TEX. R. APP. P. 33.1(a).

Refusal of Jury Instruction

In his third and final point of error, appellant contends that the trial court erred by refusing to submit the following instruction proposed by appellant: "A person cannot be

8

found to be intoxicated if he lacks the normal use of mental or physical faculties for a different reason, such as disability, illness, fatigue, stress, or clumsiness."

At trial, appellant introduced medical testimony from Lubbock County Jail physician, Kathryn Hines, M.D., that, due to appellant's diabetes, appellant's blood sugar was checked every few hours during his pretrial incarceration. Hines testified that one who is suffering from diabetic ketoacidosis, a complication of diabetes, may exhibit symptoms "similar" to one who is intoxicated: nausea, confusion, vomiting, possible chest pain, possible abdominal pain, and a fruity smell to one's breath. She also testified that one suffering from diabetic ketoacidosis might breathe heavily and would feel the need to urinate frequently as a result of the body trying to rid itself of ketones. She also explained a diabetic person's increased susceptibility to the effects of alcohol.

On August 4, 2009, three days after being arrested, appellant was admitted to the hospital when he exhibited symptoms consistent with diabetic ketoacidosis. He was diagnosed with said condition at the hospital. With respect to appellant's condition at the time of his arrest, no records were admitted showing his blood sugar levels prior to the high reading taken on August 4, immediately before he was transported to the hospital. As a result, there is no direct evidence showing appellant's blood sugar levels at or around the time he was arrested. Appellant's blood sugar levels fluctuated wildly, according to Hines, even after appellant returned from his one-week stay in the hospital.

After Hines testified, both sides rested and closed. Appellant unsuccessfully requested inclusion of an instruction regarding alternate causes for loss of faculties.

9

Standard of Review

When presented with a jury charge complaint, we review the charge under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Under Almanza, we must first determine whether error exists in the charge and, if we find error, whether such error caused sufficient harm to compel reversal. See Ngo v State, 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005).

Trial Court's Charge to the Jury Generally

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); Walters v. State, 247 S.W.3d 204, 208 (Tex.Crim.App. 2007). The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. TEX. PENAL. CODE ANN. §§ 2.03(d), 2.04(d) (Vernon 2003); Walters, 247 S.W.3d at 208–09. A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. Walters, 247 S.W.3d at 209.

<u>Inclusion of Special Instructions</u>

Generally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Texas Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. <u>Id.</u> at 212 (relying on rationale of <u>Giesberg v. State</u>, 984 S.W.2d 245, 250 (Tex.Crim.App. 1998)). In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence. <u>Id.</u> Special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge. <u>Id.</u> at 211. We will evaluate appellant's proposed instruction in light of the three considerations outlined in <u>Walters</u>.

(1) Not grounded in the Texas Penal Code

The Texas Penal Code does not specifically provide a defense, affirmative defense, or justification in the nature of the instruction proposed by appellant. <u>See</u> TEX. PENAL CODE ANN. §§ 2.03(a) (providing that "[a] defense to prosecution for an offense in this code is so labeled by the phrase: 'It is a defense to prosecution . . . .'"), 2.04(a) (providing that "[a]n affirmative defense to prosecution for an offense in this code is so labeled by the phrase: 'It is an affirmative defense to prosecution . . . .'"), 8.01–.07 (defining general defenses and affirmative defenses to criminal responsibility), 9.01–.63 (Vernon 2003 & Supp. 2010) (covering justifications excluding responsibility). Also absent is an offense-specific defense in the nature of the proposed instruction. <u>See</u> <u>id.</u> § 49.04. As a general rule, if the instruction is not derived from the Texas Penal Code,

it is not "the law applicable to the case" as contemplated by article 36.14.  See Walters, 247 S.W.3d at 214.

(2) Covered elsewhere in the jury charge

Again, appellant requested the following charge:  "A person cannot be found to be intoxicated if he lacks the normal use of mental or physical faculties for a different reason, such as disability, illness, fatigue, stress, or clumsiness."  This proposed instruction went directly to the cause of appellant's loss of mental or physical faculties.  The jury charge tracked the relevant portion of the statutory definition of "intoxication" and, in so doing, required the jury to find that appellant lost the use of his mental or physical faculties "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body."  See TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003).

An instruction such as the one here—one that goes to an element of the offense that the State was called on to prove—was the type of instruction addressed in Giesberg, 984 S.W.2d at 250.  In Giesberg, the Texas Court of Criminal Appeals explained why the trial court did not err in refusing to include an "alibi" instruction:

> A defensive issue which goes no further than to merely negate an element of the offense alleged by the State in its indictment does not place a burden of proof upon a defendant to establish it.  The burden of proof is upon the State to prove those allegations.  An alibi only traverses those allegations and casts doubt upon whether the State has met its burden.  As a result, an alibi is sufficiently embraced in a general charge to the jury that the defendant is presumed innocent until he or she is proven guilty beyond a reasonable doubt.  There is ample room within that instruction for a defendant to effectively argue his defense of alibi to a jury.

12

Id. (citations omitted).  Accord Noyola v. State, No. 07-03-00473-CR, 2004 Tex.App. LEXIS 11210, at *4–*5 (Tex.App.—Amarillo December 14, 2004, no pet.) (in appeal of DWI conviction, relying on Giesberg to conclude that the trial court's refusal of an instruction concerning appellant's diabetic condition was not error).

Likewise, here, the State had to prove beyond a reasonable doubt that appellant had lost the use of his mental or physical faculties due to the introduction of alcohol into his body.  Alternative causes for his loss of faculties went directly to an element on which the State bore the burden of proof beyond a reasonable doubt.  Further, nothing in the jury charge prevented the jury from considering whether appellant's loss of mental or physical faculties was caused by something other than the introduction of alcohol into his body.  See Walters, 247 S.W.3d at 213.  The substance of appellant's proposed instruction was adequately addressed in the jury charge.

(3) Focusing jury's attention on specific type of evidence

Because the defensive issue concerning the cause of the appellant's loss of mental or physical faculties was adequately accounted for within the general charge to the jury, a special instruction on alternate causes for the loss of faculties would have needlessly drawn the jury's attention to the evidence concerning appellant's medical condition.  Therefore, the special instruction on alternate causes for loss of mental or physical faculties would have constituted an unwarranted comment by the trial court on the weight of the evidence.  See id. at 210; Giesberg, 984 S.W.2d at 250.

The three relevant considerations weigh in favor of the trial court's refusal of the proposed special instruction.  See Walters, 247 S.W.3d at 212.  That being so, the trial

13

court did not err by refusing to include the proposed instruction in its charge to the jury. Accordingly, we overrule appellant's third and final issue.

## Conclusion

Having overruled appellant's three issues presented on appeal, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Do not publish.